Alfred MORALES, Petitioner,

v.

Ralph COYLE, Warden Respondent.

No. 1:95 CV 2674.

United States District Court,
N.D. Ohio,
Eastern Division.

March 29, 2000.

Order Amending Opinion May 15, 2000.

Amanda Martinsek, Vorys, Sater, Seymour & Pease, Cleveland, OH, David H. Bodiker, Laurence E. Komp, Office of the Public Defender, Ohio Public Defender Commission, Columbus, OH, Peter T. Cahoon, Buckingham, Doolittle & Burroughs, Akron, OH, for Petitioner.

Michael L. Collyer, Office of the Assistant Attorney General, Cleveland, OH, Charles L. Willie, Jonathan R. Fulkerson, Office of Attorney General, Columbus, OH, for Respondent.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon Alfred Morales' Petition Under 28 U.S.C. Section 2254 For Writ Of Habeas Corpus By A Person In State Custody (Dkt.# 12) (the "Application"). Morales alleges nineteen grounds for relief in the Application.

Also before the Court are Respondent's Return of Writ (Dkt.# 14) ("ROW"), Petitioner Morales' Traverse To Respondent Coyle's Return Of The Writ (Dkt.# 25) ("Traverse"), and Respondent's Reply To Petitioner's Traverse (Dkt.# 28) ("Reply").

For the reasons which follow, the Court denies the Application.

## I. INTRODUCTION

In 1985, Morales was convicted by a jury in the Common Pleas Court of Cuyahoga County, Ohio of aggravated murder and kidnapping and sentenced to death [1] for killing twelve-year old Mario L. Trevino ("Mario").

## II. FACTUAL BACKGROUND

The facts as stated by the Ohio Supreme Court are as follows:

On the evening of March 2, 1985, Mario L. Trevino, age twelve, was killed in Cleveland, Ohio. The victim, five feet, two inches tall, and weighing ninety-three pounds, had been savagely beaten to death [footnote omitted]. The record reveals the following sequence of events which preceded this tragic conclusion.

Appellant, Alfred J. Morales, stands five feet, eight inches tall, weighs two hundred twenty pounds, and is an expert in the martial arts. The Trevino family, Mario being the youngest male member, had known appellant for many years prior to the evening of March 2, 1985. Through their acquaintanceship with appellant, the Trevinos were well aware of appellant's skill in the martial arts and of his ability to use a variety of weapons for their intended purposes.

For a time, Jesse Trevino, the victim's older brother, and appellant had been friends. The friendship ended at a previous time when Jesse refused to commit perjury for appellant, thereby depriving appellant of an alibi regarding the theft of a taxicab. As a result of Jesse's refusal, appellant pled guilty to the theft offense and was returned [footnote omitted] to the Mansfield Reformatory.

While in the Mansfield Reformatory, appellant wrote threatening letters to Toby Trevino, brother of both Jesse and Mario. The letters suggested revenge upon the whole Trevino family, including Yolando Trevino, sister of Jesse, Toby and Mario, who had previously refused to become appellant's girlfriend. The

---

1. Additionally, the trial court sentenced Morales to a term of ten to twenty-five years on the kidnapping conviction under Case No. CR—199299, and to life imprisonment on a separate aggravated murder conviction under Case No. CR—198082.

envelope of one letter contained both a drawing and the letters "D.W.C.S.," "B.W." and "D.O.D." The letters were later shown to mean "Death Will Come Soon," "Beware" and "Demon of Darkness," a name appellant used for himself. The drawing on this envelope depicts a heart pierced by a sword. Toby Trevino's name is printed on the heart and blood is dripping from the tip of the sword. The envelope of the second letter likewise contained a drawing. The second drawing depicts a skull, dripping blood, with a sword passing through it. Beneath the skull is printed the word "DANGER."

On February 19, 1985, appellant was released from the Mansfield Reformatory. During the three-week period between appellant's release and Mario's murder, appellant was observed watching the Trevino home while hiding in the bushes of a house near the Trevinos' residence. During this same time period, appellant stated to a variety of witnesses that he was "going to kill Toby's ass." that "he had some killing to do and that he knew he was going back to where he came from," and that "he had * * * a killing to do, and [that] he knew he was going back * * * [a]nd didn't care."

On the evening of his death. Mario left home some time after 6:00 p.m. to play video games at a nearby store. After leaving the store, Mario was confronted by appellant who told Mario that the wanted to talk with him regarding the problems between appellant and the Trevino family. Mario accompanied appellant from the store to a secretive location, approximately one and one-half to two miles from the store. It was at this location that appellant murdered Mario.

Following the murder, appellant went to the nearby home of an acquaintance to wash the blood from his hands and apply ice to his knuckles to control the swelling. When appellant left that loca-

tion, he left behind the towel containing the ice for his knuckles and his blood-stained white shirt. Soon after appellant's departure, the towel and blood-stained shirt were turned over to the authorities.

Later that same evening, appellant was confronted by Jesse and Toby Trevino who, having learned that Mario had been seen in the company of appellant, questioned appellant as to Mario's whereabouts. Appellant responded: "I haven't seen Mario," "I'm not taking the rap for nothing I didn't do. man." and "[y]ou know, the next time I go into jail, it's going to be for murder."

Early the next morning, March 3, 1985, Mario's body was discovered. While notifying the Trevinos of Mario's death, the authorities were informed of the threatening letters sent by appellant. Appellant was subsequently arrested and his home searched. The search produced a jacket and shoes which were still wet from having recently been washed.

After being informed of his constitutional rights, appellant therein provided police with both oral and written statements concerning the death of Mario. In both the oral and written statements, appellant admitted that he had confronted the boy at the beverage store, led him to the secluded location and then brutally beat the child, leaving Mario to die.

Appellant was subsequently indicted for kidnapping in violation of R.C. 2905.01, aggravated murder with prior calculation and design in violation of R.C. 2903.02(A) [footnote omitted], and aggravated murder in violation of R.C. 2903.02(B) [footnote omitted] with the specification that the crime was committed while appellant was committing or attempting to commit the offense of kidnapping in violation of R.C. 2905.01. At his arraignment, appellant entered pleas of not guilty to all the offenses charged. These pleas were all subsequently

changed to pleas of not guilty by reason of insanity.

The indictments were consolidated for trial which commenced on December 2, 1985. On December 18, 1985, the jury returned guilty verdicts on all counts of the indictments. The subsequent penalty hearing resulted in a recommendation by the jury that the appellant be sentenced to death upon the jury's determination that the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt. The trial court, upon completion of its required independent weighing of the mitigating factors against the aggravating circumstances, adopted the recommendation of the jury and imposed the penalty of death. Additionally, the trial court sentenced appellant to a term of confinement of ten to twenty-five years for the crime of kidnapping and life imprisonment for the crime of aggravated murder with prior calculation and design.

*State v. Morales*, 32 Ohio St.3d 252, 252–54, 513 N.E.2d 267, 269–70.

## III. PROCEDURAL HISTORY

### A. Direct Appeal

In addition to the procedural history of this case set forth in the Factual Background *supra*, the Court notes that on direct appeal the Eighth Judicial District Court of Appeals for Cuyahoga County, Ohio (the "Eighth District") affirmed Morales' convictions and sentences in all respects on October 2, 1986. *See State v. Morales*, 1986 WL 11530 (Ohio App. 8 Dist.). Subsequently, on September 2, 1987, the Supreme Court of Ohio affirmed the decision of the Eighth District in all respects. *See State v. Morales*, 32 Ohio St.3d 252, 513 N.E.2d 267.

Morales then filed a petition for a writ of certiorari to the Supreme Court of the United States, which denied the petition on January 25, 1988. *See Morales v. Ohio*, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 871 (1988). On March 21, 1988, the Su-

preme Court denied Morales' Motion for Rehearing in *Morales v. Ohio*. 485 U.S. 972, 108 S.Ct. 1252, 99 L.Ed.2d 449 (1988).

On March 22, 1988. Morales filed for a Stay of Execution Pending Exhaustion of State Remedies in the Supreme Court of Ohio, which granted the Stay for a period of six months in order to enable Morales to file a petition for post-conviction relief.

### B. Post-Conviction Proceedings

Morales then filed his Petition to Vacate or Set Aside Sentence pursuant to Ohio Revised Code § 2953.21 (the "Petition") on September 21, 1988 in the Cuyahoga County Common Pleas Court. On December 21, 1988, the trial court denied the Petition. On May 11, 1989, the trial court issued Findings of Fact and Conclusions of Law and again denied the Petition.

On December 13, 1989. Morales appealed the denial of the Petition to the Eighth District, which affirmed the decision of the trial court on January 31, 1991. *See State v. Morales*, 1991 WL 8592 (Ohio App. 8 Dist.).

On March 4, 1991, Morales appealed the decision of the Eighth District affirming the denial of the Petition to the Supreme Court of Ohio, which overruled Morales' Memorandum in Support of Jurisdiction on October 30, 1991. *See State v. Morales*, 62 Ohio St.3d 1446, 579 N.E.2d 491. Morales then filed a Motion for Rehearing on October 31, 1991, which the Supreme Court denied on November 20, 1991. *See State v. Morales*, 62 Ohio St.3d 1466, 580 N.E.2d 786. On April 6, 1992, the Supreme Court of the United States denied Morales' Petition For Writ of Certiorari. *See Morales v. Ohio*, 503 U.S. 974, 112 S.Ct. 1595, 118 L.Ed.2d 311 (1992).

### C. Murnahan Proceedings

On November 16, 1992, Morales filed his Application for Delayed Reconsideration with the Eighth District, thus commencing another avenue of appellate review in connection with his claims of alleged ineffec-

tive assistance of appellate counsel, in accordance with *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204. On September 29, 1993, the Eighth District granted the Application for Delayed Reconsideration in part and denied it in part. From this decision, Morales filed a Notice of Appeal in the Ohio Supreme Court on October 27, 1993. On November 24, 1993, Morales filed a Motion for Rehearing of Direct Appeal. On January 12, 1994, the Ohio Supreme Court issued two separate orders. First, the Court denied Morales' Motion for Delayed Reinstatement of Appeal. Second, the Court affirmed the judgment of the Eighth District with respect to the Application for Delayed Reconsideration.

On December 9, 1996, Morales filed the Application herein.

## IV. INITIAL CONSIDERATIONS

### A. The AEDPA Applies To The Application

The Court notes, as a preliminary matter, that in this case the Application was filed on December 9, 1996, which was subsequent to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, the AEDPA applies herein. *See Williams v. Coyle*, 167 F.3d 1036, 1037 (6th Cir.1999). *Also see King v. Trippett*, 192 F.3d 517, 520 (6th Cir.1999) (citing *Nevers v. Killinger*, 169 F.3d 352, 357 (6th Cir.), *cert. denied*, 527 U.S. 1004, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999) and *Harpster v. Ohio*, 128 F.3d 322. 326 (6th Cir.1997). *cert. denied*, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998)).

Morales asserts in the Preface and Conclusion of his Traverse, and in his discussion in his Traverse of Ground 9, that the pre-AEDPA standard of review should apply herein. *See* Traverse at 1–2, 120, and 191. In particular, Morales points to this Court's previous ruling (Dkt.# 11) granting Morales' pre-Application motion (Dkt.# 7) for a declaration that AEDPA is inapplicable to his case. Morales asserts that he requested this declaration "so that both parties would know which version of 28 U.S.C. § 2254 was applicable to the proceedings in this case." Traverse at 1. Morales further asserts that based on the foregoing, Respondent has "scoffed" at the aforesaid declaration and has "proceeded in presenting the arguments in his Return of Writ as if this Court's order never existed." *Id.*

Because Morales' very life hangs in the balance in these proceedings, the Court takes his assertions in this regard very seriously. On the surface, Morales' arguments about the proper standard of review to be applied in his case appear possibly meritorious. However, this Court has previously considered this same argument in *Jackson v. Anderson*, No. 1:96 CV 794 (Economus, J. Jan. 14, 2000). In that case, capital habeas petitioner Jackson filed a motion (Dkt.# 65) to hold this Court's final [merits] decision in abeyance pending the Sixth Circuit's decision in *Cooey* as to the applicability of the AEDPA. Jackson filed a contemporaneous separate motion (Dkt.# 66) to hold this Court's final [merits] decision in abeyance pending the Supreme Court's decision pursuant to its grant of certiorari in *Williams v. Taylor*, 163 F.3d 860 (4th Cir.1998), *cert. granted*, — U.S. ——, 119 S.Ct. 1355, 143 L.Ed.2d 516, "to resolve the significant split in the circuits respecting the interpretation of 28 U.S.C. § 2254(d)(1) of the AEDPA." [2]

In *Jackson v. Anderson, supra*, this Court issued its Memorandum Opinion and Order (Dkt.# 71) denying both of the aforesaid motions without prejudice on January 14, 2000. Since that date, the controlling decisional law has not changed. Despite Morales' argument that this Court previously ruled that AEDPA is inapplicable herein, that issue was settled by the Sixth Circuit on February 12, 1999, subse-

**2.** *See* Dkt.# 66 at 2.

quent to the date that Morales filed his Traverse herein, and also subsequent to this Court's declaration herein that AEDPA did not apply to Morales' case, in *Williams v. Coyle,* 167 F.3d 1036 (6th Cir. 1999).

The Court finds that *Williams* remains dispositive precedent for the proposition that AEDPA applies herein. Moreover, in *Jackson,* warden Anderson argued against Jackson's request for permission to re-brief the issues in his habeas petition if the standard of review in his case was altered by a finding that AEDPA did apply. This Court found the warden's following argument to be well-taken:

> There is no reason to wait for *Williams v. Taylor* because Jackson's claims fail under any of the potential standards that the U.S. Supreme Court could adopt concerning the meaning of 28 U.S.C. § 2254(d). Moreover, the Sixth Circuit has continued to decide habeas cases after the U.S. Supreme Court granted certiorari in the *Williams* case, so there is no reason for this Court to do otherwise.[3]

Morales has not shown that he would succeed on the merits of any of his grounds for relief if he were permitted to re-brief his grounds under the standards established by AEDPA. For instance. in his discussion of Ground 12 in his Traverse at 134–35, Morales contends that Respondent herein wrongly argues that Morales has failed to establish that the trial court abused its discretion in admitting photographs of Mario "under *federal standards and precedents.*" Traverse at 134 (emphasis *sic*). But Morales then cites for support for this contention a Sixth Circuit precedent, rather than a U.S. Supreme Court precedent. Unless Morales can also cite to a U.S. Supreme Court precedent in support of this contention, he cannot prevail under AEDPA.

**B. Standard of Habeas Review Under AEDPA**

The AEDPA "requires heightened respect for state court factual and legal determinations." *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir.1998). Under the AEDPA, federal habeas courts must now accord findings of fact made in State court proceedings complete deference, pursuant to the presumption of correctness found in 28 U.S.C. § 2254(e)(1). *See Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 2403, 144 L.Ed.2d 802 (1999). An applicant seeking a writ pursuant to § 2254 may rebut this presumption of correctness only with clear and convincing evidence. *Id.*

Under the AEDPA, an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings,* unless the applicant shows that the adjudication of the claim 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. *See* 28 U.S.C. § 2254(d)(1) and (2) (as amended by the AEDPA) (emphasis added).

In the Sixth Circuit, a writ of habeas corpus "will issue" if

> the unreasonableness of the state court's application of clearly established precedent is not debatable among reasonable jurists. The unreasonableness of the application will not be debatable if it is so offensive to the precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.

**3.** *See* Dkt.# 71 at 5 (*Jackson v. Anderson, supra).*

*King,* 192 F.3d at 520 (quoting *Tucker v. Prelesnik,* 181 F.3d 747, 753 (6th Cir. 1999)).

Under § 2254(d)(1), if no Supreme Court rule can be said to require a particular result in a particular case, the "unreasonable application" prong of the inquiry applies. *See King,* 192 F.3d at 520.

▇▇▇ Federal courts may entertain a State prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a) (1994). A violation of *State* law is not cognizable in a federal habeas proceeding unless the violation is of constitutional magnitude. *See, e.g., Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). *Also see Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("It is not the province of a federal habeas court to reexamine state court determinations on state law questions."). Thus, general improprieties occurring in State court proceedings are cognizable only if they resulted in fundamental unfairness, and consequently violated the habeas petitioner's Fourteenth Amendment right to due process.

▇▇▇ Relief for violations of *federal* law will be granted only if the violation rises to the level of a "fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley,* 512 U.S. 339, 114 S.Ct. 2291, 2297, 129 L.Ed.2d 277 (1994) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962).)

▇▇▇ Federal courts apply a standard of harmless error review upon collateral review in habeas proceedings different from the standard of harmless error review which they apply in direct appellate review. This means that for purposes of federal habeas review, a constitutional error that implicates trial procedures must be considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahmson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The Sixth Circuit has held that the *Brecht* standard applies to harmless error review in habeas cases even in cases where the federal habeas court is the first to conduct harmless error review. *See Gilliam,* 179 F.3d at 995.

## V. PROCEDURAL DEFAULT

### A. Decisional Law

▇▇▇ Federal courts "will not review questions of federal law decided by a state court if the decision of that court rests upon a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Under this "procedural default" doctrine, federal habeas courts must look to the last explained state court decision to determine whether the State has relied upon procedural default to decide the claim.[4] *Ylst v. Nunnemaker,* 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir.1991).

▇▇▇ Applied to the habeas context, the doctrine of procedural default acts to bar federal review of constitutional claims that a State court has declined to address because of the petitioner's noncompliance with a State procedural requirement. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730, 111 S.Ct. 2546.[5] For example, the holding of

---

4. With respect to the separate issue of "exhaustion," the Court notes that Respondent concedes that Morales has exhausted his available state court remedies, *see* ROW at 30,

and the Court thus concludes that Morales has satisfied the exhaustion requirement.

5. The public policy rationale which gave rise to the doctrine of procedural default in the

the Supreme Court of Ohio set forth in *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), has been consistently applied by the Ohio courts to bar consideration of federal claims which were not timely asserted in State court proceedings. In *Perry,* the Supreme Court held that constitutional issues cannot be considered in post-conviction proceedings under Ohio Revised Code § 2953.21 et. seq. where the issues have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him. *Id.* at syl. para. 7. The *Perry* Court stated:

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*Id.* at syl. para. 9.

In *State v. Hester,* 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), the Supreme Court recognized an exception to the *Perry* res judicata rule, and concluded that where the record does not disclose that the issue of competent counsel has been adjudicated, the doctrine of res judicata is an improper basis upon which to dismiss an Ohio post-conviction relief petition. *Id.* at syl. para. 2.

The *Hester* exception to the *Perry* rule was modified in *State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169 (1982), as follows: Where the defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel, and said issue could fairly have been determined without resort to evidence outside the record, res judicata is a proper basis for dismissing defendant's petition for post-conviction relief. *Id.* at syl. However, in order for *Cole* to be applicable, the issue must be apparent on the face of the record *and* appellate counsel must be different than trial counsel.

■ These post-*Perry* developments and modifications to the doctrine of res judicata announced in *Hester* and *Cole* have led federal habeas courts to conclude that Ohio's post-conviction relief statute, upon which *Perry* rests, satisfies the requirements of due process. It is thus not unreasonable that *Perry* requires the assertion in direct appeal of ineffective assistance of counsel claims based upon facts in the record. The United States Supreme Court has recently reaffirmed the principle that it is necessary for a criminal defendant to raise his claims on "direct review" in order for those claims to be preserved for federal habeas review: "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citations omitted).

■ "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek,* 741 F.2d 240. 244 (9th Cir.1984), *cert. denied,* 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989).

habeas context has been well-expressed in an oft-quoted passage from *Coleman:*

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns for comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Coleman,* 501 U.S. at 731, 111 S.Ct. 2546.

The Sixth Circuit has held that when the last explained state court decision determines that the defendant procedurally defaulted by failing to comply with an adequate and independent state court rule, but also contains language to the effect that appellate review is precluded unless it is necessary to excuse the default to prevent manifest injustice, such state court decision should be construed as enforcing the procedural bar, while reserving the right to excuse it if necessary to prevent manifest injustice. *See Paprocki v. Foltz,* 869 F.2d 281, 285 (6th Cir.1989). Similarly, if the State court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys,* 929 F.2d 264, 265 (6th Cir.1991).

In determining whether a State court has addressed the merits of a petitioner's constitutional claim, federal courts must rely upon the presumption that there is no independent and adequate State ground for the State court decision absent a clear statement to the contrary. *Coleman,* 501 U.S. at 735, 111 S.Ct. 2546. Applying this presumption, the Sixth Circuit has established a four-step analysis to determine whether a claim has been procedurally defaulted. *See Maupin v. Smith,* 785 F.2d 135 (6th Cir.1986).

On the basis of the *Maupin* test, a federal habeas court must determine (1) whether the petitioner failed to comply with an applicable State procedural rule; (2) whether the State courts actually enforced the State procedural sanction; (3) whether the State procedural bar is an "adequate and independent" State ground upon which the State can foreclose federal review: and (4) if the above three conditions are met, whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138.

In the event that a federal habeas court determines that a petitioner did not comply with a State procedural rule, and that the rule is an adequate and independent State ground, "then the petitioner must demonstrate cause for not following the procedural rule and prejudice resulting from the alleged constitutional error." *Reynolds v. Berry,* 146 F.3d 345, 347 (6th Cir.1998). In the absence of "cause" and "prejudice," federal courts are barred from undertaking a habeas corpus review of State-court decisions that rest on independent and adequate State grounds. See *Lucas v. O'Dea,* 179 F.3d 412, 418 (6th Cir.1999) (citing *Sykes,* 433 U.S. at 82, 97 S.Ct. 2497). Unless the petitioner can demonstrate that there was a "justifiable reason" for his procedural default, and that the claimed constitutional error had a "prejudicial effect on the effectiveness of his defense," he is not entitled to a review of the State courts' determinations of the issue. *Lucas,* 179 F.3d at 418 (citing *Coleman,* 501 U.S. at 754, 111 S.Ct. 2546) (habeas petitioners carry the burden of demonstrating cause and prejudice in order to overcome procedural default).

The "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94, 96 (6th Cir.), *cert. denied,* 474 U.S. 831, 106 S.Ct. 99, 88 L.Ed.2d 80 (1985). A claim raised in the state Court of Appeals but not in the state Supreme Court cannot be considered in federal habeas. *Leroy,* 757 F.2d at 100. *Also see O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).

In *Calderon v. Thompson,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), the Supreme Court stated:

In light of "the profound societal costs that attend the exercise of habeas jurisdiction," *Smith v. Murray,* 477 U.S. 527, 539, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), we have found it necessary to impose significant limits on the discretion of federal courts to grant habeas relief. See, e.g., *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (limiting court's dis-

cretion to entertain procedurally defaulted claims).

*Id.* at 1500. Therefore, unless a habeas petitioner can show cause and prejudice in connection with a procedural default of a habeas claim, or that his case falls within the " 'fundamental miscarriage of justice' exception to the procedural default rule," *id.* (quoting *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546), the claim cannot be heard in federal habeas.

 Attorney error that amounts to ineffective assistance of counsel can constitute "cause" under the cause and prejudice test. *See Gravley v. Mills,* 87 F.3d 779, 785 (6th Cir.1996). In order to constitute sufficient cause to overcome the procedural default, a counsel's performance must be constitutionally deficient. *Id.* at 785. However, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier,* 477 U.S. 478, 486, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

The Sixth Circuit has held that an Ohio court's denial on procedural grounds of a claim of ineffective assistance of *appellate* counsel precludes a petitioner from raising the claim as an independent habeas claim in his federal habeas petition. *Carpenter v. Mohr,* 163 F.3d 938, 945 (6th Cir.1998), *cert. granted sub nom, Edwards v. Carpenter,* — U.S. —, 120 S.Ct. 444, 145 L.Ed.2d 362 (Nov. 8, 1999).

As the Court discussed *supra,* the courts sometimes "forgive" this type of procedural default of an ineffective assistance claim by a habeas petitioner when he or she was represented by the same counsel at trial and on direct appeal, on the theory that it is unrealistic that trial counsel can effectively argue his or her own "ineffectiveness" on appeal. *See, e.g., Mapes v. Coyle,* 171 F.3d 408, 421 (6th Cir.1999) ("The only exception to [the] rule [that all assignments of error that were or could have been raised on direct appeal may not be considered in a post-conviction proceeding]

occurs when ineffective assistance of counsel is alleged and the petitioner had the same counsel during trial and on direct appeal. Even in its broadest form, this exception encompasses only those claims for which evidence is not contained in the trial record. *See State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982)."). Thus, except for those federal habeas cases arising in Ohio in which the *Cole* modification to *Perry* applies, if the petitioner cannot show cause for the procedural default of his habeas claim in a State court and prejudice resulting therefrom or, alternatively, that he is "actually innocent" of his conviction for the offense at issue, his "independent" claims—including his claims of ineffective assistance—cannot be raised in federal habeas proceedings. *See Bousley,* 118 S.Ct. at 1611; *also see Carrier,* 477 U.S. at 494–96, 106 S.Ct. 2639.

*B. Respondent's Contention That Morales Has Procedurally Defaulted Fourteen Of His Grounds For Relief*

Respondent argues that fourteen of the nineteen grounds for relief contained in the Application have been procedurally defaulted under Ohio and federal law. Respondent initially notes:

As discussed above [in the Statement Of The Case section of the ROW ] in the Ohio appellate court Morales asserted seven (7) claims at the court of appeals and again seven (7) claims at the Supreme Court on direct appeal. Thereafter, Morales filed a post-conviction petition with thirteen (13) claims almost exclusively comprised of claims which either were, or could have been, asserted by Morales on direct appeal.

Morales also brought a "Murnahan" claiming ineffective assistance of counsel which both the Court of Appeals and Supreme Court found to be procedurally barred. Respondent notes that while the appellate court addressed twenty-one (21) claims in Morales' *Murnahan* application, it did so on a procedural

basis. The merits of the claims were obviously not addressed, which is readily apparent by the appellate court's language "... does not provide a basis for reconsideration;" therefore, the procedural bar maintains.

ROW at 32.

Respondent next contends that "[i]n performing its waiver analysis, this Court must first determine whether Morales has failed to comply with a state procedural rule. Respondent believes that Morales has failed to fairly present each of the enumerated grounds for relief to the Ohio courts for [the] reasons to follow." ROW at 34.

Respondent then asserts that Morales failed to raise on direct appeal Grounds 1, 4, 5, 6, 7, 8, 10, 11, 13, 14, 15, 16, 17 and 18 asserted in the Application. *Id.* For this reason. Respondent contends. Morales has "waived" or procedurally defaulted each of these claims. ROW at 32. Respondent addresses each of the aforesaid grounds for relief individually, and tailors his procedural default argument with respect to each ground on the basis of its procedural history.

Finally, Respondent argues that under the *Maupin* test, all of the aforesaid grounds for relief which were not raised on direct appeal have been procedurally defaulted:

> As stated above, the Ohio Appellate Courts were denied the opportunity to apply their procedural rules on direct appeal. A majority of the above grounds for relief were procedurally presented through the incorrect means of a post-conviction petition where they were properly dismissed on res judicata grounds, a procedural rule, because they should have been brought on direct appeal. Therefore, the first and second parts of the *Maupin* test have been satisfied.

> The third *Maupin* criteria [sic] has also been met as the procedural rule applicable to Morales' claim[s] is an ade-

quate and independent state ground for relief. The state procedural rule serves the State's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.

> Since the Ohio Appellate Courts were deprived [of] the opportunity to enforce the state procedural rule, Morales is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

> Morales has failed to demonstrate cause for or prejudice resulting from his failure to fairly present his waived claims to the Ohio Appellate Courts. In addition, Morales cannot rely upon "ineffective assistance of counsel" as cause for his default. Indeed, in *Murray v. Carrier*, 477 U.S. 478, 486, 106 S.Ct. 2639 (1986), the Court held:

> > the mere fact that counsel failed to recognize the actual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.

> *Ewing v. McMackin*, 799 F.2d 1143, 1149–50 (6th Cir.1986).

> In the case at bar. Morales cannot use ineffective assistance of counsel to establish cause for his procedural default because Morales' claims were not addressed on the merits by the state court. *See. e.g., Harris v. Lockhart*, 948 F.2d 450, 452 (8th Cir.1991); *Leggins v. Lockhart*, 822 F.2d 764, 768 n. 4 (8th Cir.1987), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988).

> Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent ... " *Murray*, at 496, 106 S.Ct. 2639. In the case at bar, Morales' waived claims uniformly constitute trivial challenges to well reasoned tactical decisions which do not remotely suggest that but for the claim no reasonable juror would have found

Morales eligible for the death penalty under Ohio law. *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Furthermore, as reflected by the binding factual findings of both the Ohio Court of Appeals and Supreme Court of Ohio, the record contains an abundance of evidence demonstrating Morales' guilt. Therefore, Morales has waived his right to assert the above grounds for relief in federal habeas corpus.

ROW at 42–43.

### C. Analysis Of Respondent's Contentions Concerning Procedural Default

For the reasons which follow, with respect to all but one (Ground 4) of the fourteen grounds for relief that Respondent argues are procedurally defaulted, the Court disagrees with Respondent's *Maupin* analysis. The Court concludes that, with the exception of Ground 1 (in part) and Ground 4, none of the fourteen grounds has been procedurally defaulted. The claim asserted in Ground 4, and some of the claims asserted in Ground 1, have been procedurally defaulted under *Maupin.*

First, in each instance where a claim asserted in one of the two aforesaid grounds for relief has been procedurally defaulted, Morales failed to comply with an applicable state procedural rule, i.e., the doctrine of *res judicata* set forth in *Perry, supra.*[6]

Second, the State courts actually enforced the State procedural sanction: the Eighth District and/or the Ohio Supreme Court dismissed each of the post-conviction claims on the ground of res judicata.

▆▆▆ Third, the res judicata rule is an adequate and independent State ground upon which the State can foreclose federal habeas review of the defaulted federal constitutional claims. This third question typically focuses on the adequacy of the State ground. *See Reynolds,* 146 F.3d at 347. The adequacy of the State ground is determined by examining the State's legitimate interests in the procedural rule in light of the federal interest in considering federal claims. *Id.* at 347–48. In this case, Respondent contends that the res judicata rule serves the State's interest in finality and in ensuring that claims are adjudicated at the earliest possible time. *See* ROW at 42. The Court concludes that the res judicata doctrine is an adequate and independent rule which satisfies the third *Maupin* factor. *See, e.g., Coleman,* 501 U.S. at 731, 111 S.Ct. 2546 ("In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns for comity and federalism."). *Also see Thompson,* 118 S.Ct. at 1500 ("In light of 'the profound societal costs that attend the exercise of habeas jurisdiction,' *Smith v. Murray,* 477 U.S. 527, 539, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), we have found it necessary to impose significant limits on the discretion of federal courts to grant habeas relief. See. e.g., *Wainwright v. Sykes,* 433 U.S. 72, 90–91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (limiting court's discretion to entertain procedurally defaulted claims).").

▆▆▆ Fourth, Morales has not demonstrated cause and prejudice. As to "cause," cause for a procedural default on appeal "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." *Ewing,* 799 F.2d at 1149 (quoting *Carrier,* 477 U.S. at 492, 106 S.Ct. 2639). Morales has not made this showing. Furthermore, Morales may not assert ineffective assistance of counsel as "cause," because *"Rose v. Lundy* [455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) ] generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a proce-

---

**6.** As stated in the *"Decisional law"* section *supra,* there are recognized exceptions to the *Perry res judicata* rule, which the Court discusses *infra.*

dural default." *Carrier,* 477 U.S. at 489, 106 S.Ct. 2639. Morales failed to do this on direct appeal. Moreover, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Id.* at 478, 486.

As for the "prejudice" component of the fourth *Maupin* factor, the prejudice component of the cause and prejudice test utilized in collateral attacks upon a State court judgment is not satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim. *See Rust v. Zent,* 17 F.3d 155, 161 (6th Cir.1994). Morales has not alleged that there was not "strong evidence" of his guilt; accordingly, the prejudice component "is not satisfied." *Id.* at 162.

The Court having thus generally determined that Morales cannot show cause and prejudice in connection with the procedural default of the aforesaid claims, unless Morales can show that his case somehow falls within the " 'fundamental miscarriage of justice' exception to the procedural default rule," *Thompson,* 118 S.Ct. at 1500 (quoting *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546), those claims cannot be heard in federal habeas. *Id.*

At this juncture, the Court will recapitulate Respondent's procedural default argument for each separate ground for relief. The Court will then examine Morales' arguments in this regard and Respondent's rejoinder thereto. The Court will then render its opinion with respect to whether each particular ground or claim has been procedurally defaulted, and whether Morales has demonstrated any valid reason to forgive or excuse the procedural default of those of his claims which have been defaulted, so as to permit this Court to address the merits of those grounds. Finally, Court will address the merits of each of

the claims asserted in the twelve grounds for relief in the Application which the Court has determined were not procedurally defaulted.

In section **VI** *infra,* the Court will then examine Morales' five remaining grounds for relief (those which Respondent does not argue have been procedurally defaulted) on the merits.

**Ground 1**—*Petitioner Morales Was Denied The Right To The Effective Assistance Of Counsel At Trial Of This Case, In Violation Of The Fifth, Sixth, And Fourteenth Amendments To The United States Constitution.*

▮▮▮▮ In Ground 1, Morales alleges that he was denied his right to a fair trial because he was denied the effective assistance of counsel prior to trial, during the guilt phase of the trial, and during the penalty phase of the trial. Respondent contends that although this claim is "obviously based upon the record." the claim was not raised in Morales' direct appeal. ROW at 34. Instead, Respondent argues, Morales "incorrectly" asserted this claim [7] in the Petition in the Eighth District which, citing *State v. Cole* (1982), 2 Ohio St.3d 112, 114, 443 N.E.2d 169, found that this claim was barred by res judicata, and that direct appeal was the appropriate time to raise the claim of ineffective assistance of trial counsel. *Id.*

The Court finds that the Eighth District did indeed state that *Cole* held that "res judicata bars an individual from raising ineffective assistance of trial counsel in a petition for post-conviction relief if the individual was represented by different counsel on appeal and the issue of trial counsel's ineffectiveness could fairly have been determined without resort to evidence dehors the record." *State v. Morales,* 1991 WL 8592, *3. The Eighth District concluded with respect to the claim asserted in Ground 1 of the Application:

---

7. Respondent appears to be mistaken when he states that the claim asserted in Ground 1 was asserted in Morales' post-conviction relief petition as "the 1st and 2nd claim" therein.

Rather, the Eighth District stated that this claim was asserted as the seventh and ninth assignments of error in the Petition. *See State v. Morales,* 1991 WL 8592, *3.

In the instant case, appellant was represented by new counsel on appeal. Furthermore, we find that the issue of trial counsel's ineffectiveness could fairly be determined without resort to evidence dehors the record. Direct appeal was the appropriate time to raise the claim of ineffective assistance of counsel. Thus, we conclude that res judicata bars consideration of this issue in a post-conviction proceeding.

Appellant's seventh and ninth assignments of error are not well taken and are overruled.

*Id.*

With respect to Ground 1. Respondent asserts that a claim which should have been raised on direct appeal, and which is presented for the first time in a post-conviction petition, is procedurally barred from review in federal habeas. *See* ROW at 34. As support for this proposition, Respondent relies upon *Castille v. Peoples,* 489 U.S. 346, 350–51, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) and *Beuke v. Collins,* Case No. C1–92–507 (S.D.Ohio, Oct.19, 1995) at pp. 58–71, 99–100. *Id.* The Court finds that *Peoples* does not clearly support Respondent's proposition.[8] The Court further finds with respect to *Beuke* that Morales is correct in pointing out that the Sixth Circuit remanded that case to State court for further factual development prior to briefing on the merits. *See* Traverse at 23. Morales contends that "[g]iven the fact that the case has been remanded to state court even without briefing, the case is of little precedential or persuasive value." *Id.* The Court agrees. However, this does not end the procedural default analysis with respect to Ground 1.

With regard to the issue of whether Ground 1 has been procedurally defaulted, Morales states:

Petitioner concedes that some of the instances of ineffective assistance of counsel set forth above appear on the record of this case and should have been raised on direct appeal. In fact. Petitioner specifically argued that in his application for delayed reconsideration based on *State v. Murnahan.* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992). (Appendix to ROW, Exhibits EEEE and JJJJ.) The court of appeals addressed the claim—on its merits—and in fact granted reconsideration of one ground presented [footnote omitted], and then dismissed the remaining grounds (Appendix to ROW, Exhibit GGGG, pp. 34–40). Therefore, there is no default problems [sic] as it relates to the ineffective assistance of counsel present on the record.

The Respondent ignores the fact that Petitioner also presented the claim of ineffective assistance of counsel in his Petition for Post–Conviction Relief. (Appendix to Traverse, Tab# 11, Causes of Action One and Two.) Clearly, the issues presented that are supported by *de hors* the record evidence would not have been defaulted. Most notable is the ineffective assistance of counsel in the penalty phase. While it may be obvious from the record that no mitigating evidence was presented, it would be impossible to show prejudice on direct appeal without the ability to conduct an investigation and present the court with evidence of what *could* have been presented. This *de hors* the record evidence could not be added to the record

---

8. In *Peoples,* 489 U.S. at 349–50, 109 S.Ct. 1056, the Court stated: "Today we address again what has become a familiar inquiry: 'To what extent must the petitioner who seeks federal habeas exhaust state remedies before resorting to the federal court?' *Wainwright v. Sykes,* 433 U.S. 72, 78, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (emphasis added)."

This Court believes, therefore, that in *Peoples* the Supreme Court was discussing the concept of "exhaustion" rather than the rules of "procedural default." Indeed, Morales makes this very argument in his Traverse, at 22. The Court agrees with Morales that *Peoples* "does not hold or stand for the propositions cited by Respondent and as such is of no consequence to the procedural default analysis in this case." *Id.*

on direct appeal and would only be properly presented in a post-conviction petition, as Mr. Morales did.

Traverse at 74–75.

The Court finds that Morales' aforesaid procedural default argument is, to a certain extent, well-taken. The Court finds, however, that to the extent that the Eighth District held in the post-conviction proceeding that *Cole* required Morales to raise those of his claims of ineffective assistance which could fairly have been determined without resort to evidence dehors the record in his direct appeal, the Eighth District correctly determined that those claims were procedurally defaulted.

As noted by Morales, the Eighth District subsequently decided certain of his claims of ineffective assistance on the merits, pursuant to his application for delayed reconsideration. *See* Appendix to ROW, Exhibit GGGG at 34–40. Those particular claims have therefore not been procedurally defaulted herein.

*Pre–Trial Duties Of Trial Counsel*

■ With respect to counsels' pre-trial duties, the Eighth District addressed the claim that trial counsel would not have pursued the "not guilty by reason of insanity defense" had counsel conferred with the defense's own expert, Dr. Rita Politzer. *Id.* at 34–35. The crux of Morales' complaint in this regard is that during the cross-examination of Dr. Politzer, she admitted that she agreed with the position that "voluntary intoxication is not a basis for the insanity defense. Tr. 1549–50." *Id.* at 35. The Eighth District concluded, however, as follows:

> Dr. Politzer clearly expressed her opinion that, due to a mental illness, appellant did not know that his conduct which resulted in the death of Mario Trevino was wrong. This testimony does not, therefore, reflect a lack of investigation on the part of trial counsel.

*Id.* This Court concludes, with respect to this particular claim, that Morales has not shown that the adjudication of this claim

by the Eighth District (and its affirmance by the Ohio Supreme Court) either 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2). The Court thus may not grant a writ with respect to this claim. *See King,* 192 F.3d at 520.

■ The other "pre-trial duty" claim addressed on the merits by the Eighth District was that trial counsel did not file a motion to dismiss asserting the unconstitutionality of Ohio's death penalty scheme. The Eighth District opined: "The constitutionality of Ohio's statutory framework for the imposition of capital punishment had been upheld, however, during the prior year. *See Jenkins, supra,* paragraph one of the syllabus." Appendix to ROW, Exhibit GGGG at 35. This Court concludes that with respect to the Eighth District's adjudication of this claim. Morales has not shown that said adjudication was erroneous pursuant to § 2254(d)(1) or (2). The Court thus may not issue a writ with respect to this claim. *King,* 192 F.3d at 520.

*Voir Dire*

The Eighth District noted that Morales complained that his trial counsel should have objected to the remarks made by the trial judge regarding the break-in of chambers. *See* Exhibit GGGG at 36. For the reasons discussed *infra* with reference to Ground 7, the Court concludes that this claim is without merit, and thus overrules it.

The Eighth District rejected Morales' claim that his trial counsel erred by not questioning prospective jurors about pretrial publicity. That court noted that two of the prospective jurors were questioned about pretrial publicity in the presence of the other prospective jurors. The Court concludes that Morales has not shown that

he is entitled to a writ with respect to this claim. *King.* 192 F.3d at 520.

Next, the Eighth District rejected Morales' claim that his trial counsel erred by failing to object to the error in selecting the special venire pursuant to Ohio Revised Code 2945.18. Exhibit GGGG at 36–37. That court noted that Morales did not specify "what 'error' concerns him." [9] *Id.* at 36. The Eighth District concluded that Morales had failed to demonstrate any prejudice to him as a result of this alleged error. This Court concludes that Morales has not shown that he is entitled to a writ with respect to this claim. *King,* 192 F.3d at 520.

*Guilt / Innocence Phase*

With respect to the ineffective assistance of trial counsel claims raised by Morales with regard to the guilt / innocence phase of his trial, the Eighth District stated:

> Appellant complains that trial counsel was ineffective by their failure to respond to the prosecution's asking appellant's father whether appellant invoked the defense of not guilty by reason of insanity in other criminal matters. This issue was discussed in Section F, above. Likewise, the issue of the propriety of using numerous photographs was discussed in Section D, above. Furthermore, the issue of the propriety of not recording side bar conferences was discussed in Section Q. above.

Appendix to ROW. Exhibit GGGG at 37.

This Court concludes that Morales has not shown that the adjudication of any of the guilt / innocence claims raised by Morales in his application for delayed reconsideration resulted in a decision by the Eighth District that was unreasonable to the degree required by 28 U.S.C. § 2254(d) in order for this Court to be permitted to issue a writ with respect thereto. *King,* 192 F.3d at 520.

*Penalty Phase*

Finally, it must be noted that Morales does claim that he is "actually innocent" of the death penalty. *See* Traverse at 47. Morales contends that "[b]ecause no competent sentencing investigation was conducted, the trier of fact did not receive crucial psychological information and information concerning Mr. Morales' character, history, and background." [10] *Id.* In the First Cause of Action asserted in his post-conviction petition, Morales catalogues a list of failures and omissions which allegedly demonstrates his trial counsels' violation of their duty of pre-mitigation investigation and preparation. The violation of this duty, Morales claims, resulted in trial counsels' failure to present mitigation evidence to his jury in the penalty phase.

Morales fails to show, however, how additional pre-mitigation investigation and preparation would have changed the outcome of the penalty phase of his trial. *See United States v. Lewis,* 786 F.2d 1278, 1283 (5th Cir.1986); *also see Gallego v. McDaniel.* 124 F.3d 1065, 1077 (9th Cir. 1997).

Morales argues that his trial counsel were ineffective for failing to present a psychological defense or any mitigating evidence. However, "the reasonableness of a strategic choice is a question of law to be decided by the court, not a matter subject to factual inquiry and evidentiary proof...." *Provenzano v. Singletary,* 148 F.3d 1327, 1333 (11th Cir.1998). There is no *per se* ineffectiveness when no mitigation evidence is offered; residual doubt (and/or an appeal for mercy) is a proper strategy that can be employed in the place of presentation of mitigation evidence.

---

9. The Court noted that the prosecution noted that the special venire in Morales' case consisted of 100 names, of which 46 or 47 came to court. Tr. 69. R.C. 2945.18, however, requires that "not fewer than fifty nor more than seventy-five ballots or names" be drawn. The Eighth District stated that the prosecution argues that this is a "mere technical violation." Tr. 69.

10. Morales refers the Court to the Appendix to Traverse, Tab # 11.

*Stringer v. Jackson,* 862 F.2d 1108, 1116 (5th Cir.1988).

In *Moore v. Johnson,* 194 F.3d 586 (5th Cir.1999), the Fifth Circuit recently stated:

Notwithstanding the constitutional stature of appropriate mitigating evidence in a capital case, counsel's failure to develop or present mitigating background evidence is not per se deficient performance. To the contrary, a considered strategic or tactical decision not to present mitigating evidence that is made after a thorough investigation of the law and facts relevant to all plausible lines of defense is presumed to be within the wide range of professionally reasonable assistance defined by Strickland. Stated differently, Strickland requires that we defer to counsel's decision not to present mitigating evidence or not to present a certain line of mitigating evidence when that decision is both fully informed and strategic, in the sense that it is expected. on the basis of sound legal reasoning, to yield some benefit or avoid some harm to the defense.

*Id.* at 615 (citations omitted).

Similarly, in *Sidebottom v. Delo,* 46 F.3d 744, 754–55 (8th Cir.), *cert. denied,* 516 U.S. 849, 116 S.Ct. 144, 133 L.Ed.2d 90 (1995), the Eighth Circuit concluded in a capital habeas case that an evidentiary hearing was not required on the petitioner's claims that his counsel were ineffective for failing to present a psychological defense or mitigating evidence:

We conclude that the absence of evidence concerning any mental disease, defect, or extreme disturbance suffered by Sidebottom, coupled with counsel's legitimate concern of exposing what clearly would have been damaging information, distinguishes this case from previous cases in which we have held that a failure to investigate and/or present evidence of mental disease or defect was both unreasonable and prejudicial. *See, e.g., Hill v. Lockhart,* 28 F.3d 832 (8th Cir.), *cert. denied,* 513 U.S. 1102, 115 S.Ct. 778, 130 L.Ed.2d 673 (U.S.1995);

*Kenley v. Armontrout,* 937 F.2d 1298 (8th Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991); *Thomas v. Lockhart,* 738 F.2d 304 (8th Cir.1984). Accordingly, we agree with the district court and the Missouri state courts that counsel performed a reasonable investigation and, after conferring with Sidebottom, made a strategic decision not to present a psychological defense or mitigating evidence. We have previously found that similar decisions do not constitute ineffective assistance of counsel. *See, e.g., Whitmore v. Lockhart,* 8 F.3d 614 (8th Cir.1993); *Laws v. Armontrout,* 863 F.2d 1377 (8th Cir. 1988) (en banc), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989); *Wilkins v. Iowa,* 957 F.2d 537, 540 (8th Cir.1992). Because we conclude that trial counsel was not ineffective, we do not reach the prejudice prong of the ineffective assistance of counsel analysis.

*Id.* at 754–55.

Morales asserts:

Petitioner Morales was prejudiced by defense counsel's inadequate representation at the mitigation phase of his capital trial. That prejudice is most apparent by comparing the evidence presented to the jury at Petitioner's mitigation hearing (none), and the extensive amount of evidence which was readily available but not presented. (See Exhibits D, E, E2, E3, F, F1, G, H, I, J,K, L, M, N, O, P and Q.) Due to trial counsel's ineffectiveness in the mitigation phase, the jury in Petitioner's case was prevented from making an individualized consideration of the appropriateness of the death sentence and of Petitioner's character, social history and family background as well as other mitigating factors arising from his disadvantaged environment, emotional problems and intellectual deficits.

Post-conviction Petition at ¶ 30.

██ It is true that mitigating evidence concerning a particular defendant's charac-

ter or background plays a constitutionally important role in "producing an individualized sentencing determination that the death penalty is appropriate in a given case." *Moore,* 194 F.3d at 612 (citing *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) and *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 875, 71 L.Ed.2d 1 (1982)). Nevertheless, in Morales' case, it is apparent from the record that Morales' counsel had ample reason for choosing not to present any evidence in mitigation of punishment other than Morales' unsworn statement. There was simply too great a risk that the presentation of additional witnesses by the defense in the mitigation phase may have resulted in the elicitation of harmful information upon cross-examination of those witnesses. In particular, there was a genuine risk that the jury might conclude that Morales had failed to adduce *any* mitigating evidence to counter the aggravating circumstance of his being the principal offender during the commission of the aggravated murder and kidnapping.

As in *Sidebottom,* 46 F.3d at 754, "in the absence of any disease, defect, or extreme disturbance" suffered by Morales, "coupled with counsel's legitimate concern of exposing what clearly would have been damaging information," Morales' trial attorneys "made a strategic decision not to present a[ny] psychological defense [other than the testimony of Morales' retained psychologist, Dr. Rita Politzer] or [additional] mitigating evidence." These considerations also make it clear that Morales' trial attorneys exercised reasonable professional judgment and strategic thinking when they chose not to seek the assistance of a "mitigation expert."

Subsequent to his trial, Morales amassed affidavits from his family members and friends who say they could have testified on his behalf had they only been called by his trial counsel. However, the fact that Morales' post-conviction attorneys could get affidavits from family and friends reflects a common practice in capital cases once the death penalty has been imposed.

Typically, these affidavits state that the affiants could have supplied additional mitigating evidence had they been called by the defense or, if they were called, had they been asked the "right" questions. *See Waters v. Thomas,* 46 F.3d 1506, 1513–14 (11th Cir.1995). Morales' case is no exception in this regard.

Had Morales actually called the friends and family he identifies as potential mitigation witnesses, however. Morales' distasteful idiosyncrasies and traits very likely would have been elicited upon cross-examination of these witnesses. The awareness of Morales' trial counsel of this fact is evident in the record, and constitutes evidence of trial strategy rather than ineffectiveness of counsel. *See e.g., Sidebottom,* 46 F.3d at 754 (evidence of abusive home life would have opened the door to prior rape on cross-examination).

Morales told the jury in his unsworn statement that he had started drinking alcohol at an early age "because I couldn't deal with a lot of things." Tr. at 1704. He said that he had a brother "who used to beat me all the time, and I couldn't understand it." *Id.* He told the jury that every time he got drunk he would "end up doing something" and not remember it the next day. Tr. at 1705. Morales also told the jury: "I did a lot of things to that [Trevino] family, and I know that I've never done nothing to that family while I was sober. Everything that I have done was because I was under the influence of alcohol."[11] Tr. at 1706.

---

11. Morales' explanation that it was "alcohol" that made him do "a lot of things" to the Trevino family does not explain why he sent the family threatening letters from Mansfield Reformatory prior to his release and his kill-ing of Mario. (The Court assumes that Morales did not have access to alcohol with which to get drunk while he was in Mansfield Reformatory.)

In his closing argument in the penalty phase, lead defense counsel Mr. Damiani sagely told the jury that Morales was a "drunk" and an "alcoholic," but "it's not an excuse." Tr. at 1712. Damiani argued that the murder "wasn't revenge, and I know how those letters look". *Id.* Counsel urged the jury to consider the youth of Morales (age 22), and the fact that he had been drinking since age nine, as mitigating factors. *Id.* Counsel begged the jury to consider Morales' "mental state" at the time of the offense. "The fact that he was drunk. The fact that he told you he didn't remember how he killed him, and whether he had a weapon or not. You must weigh that against the kidnapping." Tr. at 1712–13. Mr. Damiani concluded with a strong argument that the mitigating factors adduced by Morales outweighed the aggravating circumstance of being the principal offender during the commission of the aggravated murder and kidnapping:

> The kidnapping again is the only aggravating circumstance here, and you must look at the mitigating factors. Those mitigating factors I submit to you outweigh the existence of that kidnapping. The kidnapping occurred because Mario walked away because Alfred wanted to talk to him, and that is a kidnapping under our law and you found that as such.

> But, is that so aggravating a circumstance that you can't consider Mr. Morales' alcoholism, his age, and most of all his whole life? When you consider those things, you cannot put this man to death. Put him in jail for the rest of his life, but do not kill him, because the aggravating circumstances are not outweighed or do not outweigh the mitigating factors that you have before you.

> Thank you, ladies and gentlemen.

Tr. at 1713–14.

As the *Sidebottom* court concluded, because Morales' "trial counsel was not ineffective," this Court too need "not reach the prejudice prong of the ineffective assistance of counsel analysis." 46 F.3d at 755.

Nonetheless, the record reveals that the course of conduct of Morales' trial attorneys did not prejudice him. Rather, his attorneys' course of conduct provided Morales' jury with a reason to conclude—had they chosen to do so—that the aggravating circumstance of the kidnapping during the murder did not outweigh the mitigating factors which defense counsel enumerated to the jury in the penalty phase. *See* Tr. at 1712–13.

For the foregoing reasons, the Court concludes that the decision of the Eighth District to decline to address the claim presented as Morales' Seventh cause of action in his post-conviction petition because of Morales' noncompliance with the res judicata rule embodied in *Cole* bars the consideration of that claim herein. With respect to Morales' claim of ineffective assistance at the mitigation phase of his trial, presented as his Ninth cause of action in the post-conviction petition, this Court has considered that claim on the merits, due to Morales' allegation that he is "actually innocent" of the death penalty.

To the extent that the Eighth District chose to address on the merits in the proceedings upon Morales' application for delayed reconsideration Morales' two claims concerning trial counsels' pre-trial duties, his three claims concerning trial counsels' alleged errors during the voir dire phase of his trial, and his two claims of ineffective assistance in the penalty phase, the Court has concluded that these claims were not procedurally defaulted, but that they are nonetheless without merit.

The Court overrules Ground 2.

**Ground 4**—*The Trial Court's Instruction Concerning "Kidnapping" Relieved The State Of Its Burden To Prove The Offense And Resulted In An Impermissible Presumption In Violation Of The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.*

In Ground 4, Morales contends that he was denied his right to a fair trial due to the trial court's instruction on kidnapping. Respondent argues that the claim asserted in this Ground "is wholly based upon the record, yet it was never raised in Morales' direct appeal." ROW at 35. Respondent also asserts that Morales also failed to raise this claim in the Petition in the Eighth District. Respondent argues that under Ohio law the courts will not consider any error which could have been brought to the trial court's attention so that the court could have avoided or corrected the error. *Id.* Accordingly, Respondent concludes, Morales "has waived this claim for purposes of federal habeas as a consequence of his failure to raise said claim on direct appeal as required by Ohio law. Morales has failed to set forth any cause why this claim was not asserted on direct appeal; as such, the claim is procedurally barred from review in federal habeas." *Id.*

Morales responds to the aforesaid argument by asserting that "Petitioner would argue that his counsel on appeal were [sic] ineffective for failing to raise this issue." Traverse at 95. The Court disagrees.

The mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *See Carrier,* 477 U.S. at 486, 106 S.Ct. 2639. Further, the Court is not persuaded that the alleged faulty jury instruction amounted to a deprivation of due process: therefore, any error of appellate counsel in failing to raise this claim on direct appeal does not constitute sufficient cause to overcome the procedural default. *Gravley,* 87 F.3d at 785. Finally, Morales has not plausibly argued that he is "actually innocent" of the offenses for which he was convicted. For this additional reason, Ground 4 cannot be heard in federal habeas.

For the foregoing reasons, the Court concludes that the decision of the Eighth District to decline to address the claim asserted in Ground 4 because of Morales' noncompliance with the res judicata rule embodied in *Perry* bars its consideration herein.[12] Ground 4 is overruled.

**Ground 5**—*The Sentencing Of Petitioner To The Death Penalty Without The Jury Having First Found Petitioner Guilty Of Being The Principal Offender As Required Pursuant To The Capital Specification Of Aggravated Murder In The Course Of Kidnapping, Pursuant To R.C. § 2929.04(A)(7) Violated Petitioner's Rights As Guaranteed To Him By The Sixth, Eighth And Fourteenth Amendments To The United States Constitution.*

In Ground 5, Morales alleges that he was denied his right to a fair trial because the jury did not specifically find him to be the principal offender in the offenses. Respondent again asserts that Morales failed to raise this claim both on direct appeal and in the Petition. For this reason, Respondent argues, this claim has been procedurally defaulted.

Morales replies as follows:

What Respondent fails to recognize is that this claim was presented in Petitioner's Application for Reconsideration pursuant to *Murnahan.* Appendix to ROW. Exhibit EEEE. pp. 25–28. The court of appeals addressed the issue on its merits in its decision. Appendix to ROW, Exhibit GGGG, pp. 29–30. Because the court of appeals addressed the issue on the merits, there is no default.

Traverse at 100.

The Court observes that although the Eighth District addressed this issue on the merits, and that this ground has thus not been defaulted, a writ of habeas corpus cannot be granted with respect to Ground 5 unless Morales shows that the adjudica-

---

**12.** The Court agrees with Respondent that Morales failed to raise the particular claim asserted in Ground 4 in the Petition adjudi-

cated by the Eighth District. This constitutes an additional waiver of this claim.

tion of the claim 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d)(1) & (2) (as amended by AEDPA).

Although Morales cites and relies upon two decisions of the Ohio Supreme Court (*Waddy* and *Sneed*) which seem to be on point, the seven Unites States Supreme Court decisions he also cites and relies upon do not appear to be directly on point. *See* Traverse at 98–99. Morales therefore does not satisfy the requirements of 28 U.S.C. § 2254(d)(1).

Nor does Morales show that the adjudication of this claim by the Eighth District resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* § 2254(d)(2). As Morales correctly contends, the Eighth District did decide this claim on the merits, but this does not help Morales. The Eighth District opined:

> Appellant in this appeal argues that, under *Sneed,* the absence of a jury finding that appellant was the principal offender divests the state of jurisdiction to impose the death penalty. Appellant's argument neglects to recognize, however, that the *Sneed* court did not rely solely on the separate verdict form.
>
> Additionally, we must emphasize that the evidence in this case does not reasonably suggest that an individual juror could not have found appellant not to have been the principal offender. The evidence adduced by the prosecution does not reasonably compel a juror's conclusion that appellant's participation in this crime was

> merely that of an aider, an abettor, or a conspirator.

*Sneed, supra,* at 12.

> Likewise, in this case, appellant has not called to this court's attention any evidence which suggests that an individual juror could have found appellant to have been anything other than the principal offender. As a consequence, the absence of the principal offender language in the jury verdict form pertaining to count two of the indictment does not provide a basis for delayed reconsideration.

Appendix to ROW, Exhibit GGGG, at 30.

For the foregoing reasons, the Court overrules Ground 5 of the Application.

**Ground 6**—*The Denial By The Trial Court Of Petitioner's Motion To Suppress His Oral Statements Given To Law Enforcement Officers Violated Defendant's Rights As Guaranteed To Him By The Fifth, Sixth, And Fourteenth Amendments To The United States Constitution.*

In Ground 6. Morales alleges that he was denied his right to a fair trial when the trial court denied his motion to suppress his oral statements to members of the Cleveland Police Department. Respondent asserts that a pre-trial hearing was held on this issue, so that it is "unquestionably" a claim based wholly on the record. ROW at 36. Morales failed to raise this claim on direct appeal, but did raise it in his post-conviction petition. *Id.* The Eighth District held that the claim was barred pursuant to the *Perry* res judicata rule.

Morales argues, however, that:

> this claim was also raised in Petitioner's *Murnahan* Application in the Eighth District Court of Appeals, (Appendix to ROW, Exhibit EEEE, PP.4–5, 25), in the appeal of the denial of reconsideration, (Appendix to ROW, Exhibit III, pp. 8–10, 32–33) and in a Motion for Delayed Reinstatement of Direct Appeal as of Right in the Ohio Supreme Court. See

Appendix to ROW, Exhibit JJJJ, p. 7–9, 29. The Eighth District Court of Appeals ruled on the merits of this claim. See, Appendix to ROW, Exhibit GGGG, p. 3–5, 26–27, which was affirmed by the Ohio Supreme Court. Appendix to ROW, Exhibit MMMM.

Traverse at 106.

Upon review of the Eighth District's adjudication of the merits of the claim asserted in Ground 6, the Court notes that the Eighth District concluded that "the denial of appellant's motion to suppress is not an appropriate basis for delayed reconsideration." Appendix to ROW, Exhibit GGGG, at 5. This Court concludes that the adjudication of this claim by the Eighth District did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court.

 In particular, the Eighth District specifically held that the circumstances of Morales' warrantless arrest in his own home did not contravene the holding of *Payton v. York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980):

Appellant asserts that he was arrested in his home without a warrant and absent exigent circumstances. As a consequence, he contends that the statements and evidence seized as a result of the arrest should have been suppressed. In support of this position, appellant cites *Payton* [citation omitted].

In *Payton*, the Supreme Court stated as follows:

In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

455 U.S. at 590. The record in this case demonstrates, however, that exi-

gent circumstances existed at the time of appellant's arrest.

While police were telling the parents and sister of Mario Trevino that his body had been found, two of Mario's brothers returned home after attempting to call appellant out of his house and breaking windows in appellant's home. Tr. at 1051 and 1069–71. After police had gone to appellant's home and while police were taking appellant to a police car, Mario's brothers and a third male arrived at appellant's home, attempted to attack appellant and injured a police officer. Tr. 1051–52, 1071–72 and 1130–34.

Clearly, exigent circumstances existed at the time of appellant's arrest. Some members of the family of the victim had already attempted to take the law into their own hands. As a consequence, the warrantless arrest of appellant does not provide a basis for reconsideration.

Appendix to ROW. Exhibit GGGG at 26–27.

This Court observes that in addition to *Payton*, Morales relies upon one other Supreme Court decision which had been decided prior to the time of his trial. In this decision, *Riddick v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the companion case to *Payton*, the Supreme Court held that merely opening a door does not grant police the right to enter the home.[13] Morales argues that in his case, as in *Riddick*, 445 U.S. at 583, 100 S.Ct. 1371, the police did not give Morales an opportunity to either object or consent to the intrusion before entering the home. Traverse at 103. But as the Eighth District noted. Morales is incorrect to argue that the police were not operating under exigent circumstances at the time of his warrantless arrest. *See* Traverse at 103. Moreover, Morales himself argues that the determination of whether exigent circumstances exist is a "fact based decision." *Id.* However, under the post-AEDPA standard of review applicable herein,

---

**13.** *See* Traverse at 103.

federal habeas courts must accord findings of fact made in State court proceedings complete deference. *See Warren*, 161 F.3d at 360–61. For these reasons, Morales' reliance on *Riddick* is misplaced.

With respect to the issue of the warrantless arrest asserted in Ground 6, *Payton* and *Riddick* are the only United States Supreme Court decisions upon which Morales relies. For the reasons stated above, this reliance is misplaced; therefore, Morales fails to show that he is entitled to a writ pursuant to either § 2254(d)(1) or (d)(2). *See King*, 192 F.3d at 520. The Court therefore overrules Ground 6 with respect to the issue of his warrantless arrest in his home.

■ With respect to the issue of the voluntariness of Morales' oral statements (confession) to the police, Morales admits that he was read his *Miranda* rights on the morning of his arrest after he was taken "downtown" to the police department. Traverse at 102. Morales argues, however, that he was under the influence of alcohol at the time he executed the waiver of his *Miranda* rights, and that this waiver was thus not voluntary pursuant to the third-prong of the "voluntariness" test set forth in *Miranda*. *Id.* at 103–04. Morales claims that his extreme intoxication at the time made his confession involuntary pursuant to *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).[14]

While Morales cites to the proper test, he has failed to show that the trial court's adjudication of this claim, i.e., that his confession was voluntary because he was not so intoxicated by alcohol to render it involuntary, is not supported by the evidence in the record. There was no credible evidence that Morales drank alcohol *after* committing the murder, as opposed to *before* committing the murder. Yet the Ohio Supreme Court noted:

We find the evidence in the record conflicting on the issue of appellant's purported diminished capacity at the time of the murder. Fully seven witnesses, including a police officer, observed and talked with appellant *shortly after the murder had occurred.* Not one of the seven recalls appellant being intoxicated. Additionally, appellant's actions on the evening in question tend to reveal a man who was alert and conscious of his actions and speech. Accordingly, we will not disturb the jury's finding that appellant did not suffer from a diminished capacity to form the requisite intent to commit murder on the evening in question.

*State v. Morales*, 32 Ohio St.3d at 262 n. 8, 513 N.E.2d 267 (emphasis added).

For the foregoing reasons, the Court concludes that with respect to Ground 6, Morales fails to show that the Court may grant a writ. He fails to show that he is entitled to a writ pursuant to either § 2254(d)(1) or (d)(2). The Court overrules Ground 6 with respect to Morales' claims that his arrest was unlawful and his confession involuntary.

Finally, to the extent that the Fourth Amendment is implicated in the claim asserted in Ground 6, the claim is not cognizable in a federal habeas proceeding pursuant to *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Additionally, in *Holman v. Page*, 95 F.3d 481, 492 (7th Cir.1996), the court expressly held that "under *Strickland* no prejudice exists when evidence gathered in violation of the Fourth Amendment is erroneously admitted at trial." The Supreme Court has indicated that "the admission of illegally seized but reliable evidence does not lead to an unjust or fundamentally unfair verdict." *Holman*, 95 F.3d at 490 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 396, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). Such evidence ordinarily is excluded only for deterrence reasons that have no relation to the fairness of the defendant's trial. *Morrison*, 477 U.S. at 396, 106 S.Ct. 2574.

**14.** See Traverse at 104–05.

For the foregoing reasons, the Court overrules Ground 6 in its entirety.

**Ground 7**—*The Introduction Of Inappropriate And Prejudicial Information By A Trial Court Into A Case Pending Before Him Taints The Jury And Results In An Impartial [Sic] Jury In Violation Of The Fifth, Sixth and Fourteenth Amendments To The United States Constitution.*

 In the claim asserted in Ground 7. Morales claims he was denied his right to a fair trial when the trial judge made inappropriate comments regarding a break-in of the court's chambers over the previous weekend, in which numerous items were stolen from the chambers. Respondent argues that the claim is procedurally barred because it was never raised on direct appeal. The Eighth District refused to decide the claim on the merits in post-conviction because it was a claim of record, *see* Tr. at 54, but had not previously been raised on direct appeal, thus violating the *Perry* rule.

Morales contends, however, that the Eighth District subsequently addressed the claim on the merits. The Court agrees, and further agrees with Morales that the claim has not been procedurally defaulted. *See* Appendix to ROW, Exhibit GGGG at 5.

Nevertheless, Morales fails to show that this Court may grant a writ with respect to this claim. He fails to show that he is entitled to a writ pursuant to either § 2254(d)(1) or (d)(2). As the Eighth District stated:

> Appellant complains that the trial court's having commented to the jury regarding a break-in of the court's chambers was prejudicial to appellant. Nevertheless, the state correctly observes that, when these comments are taken in context, the court was merely extending the courtesy to the prospective jurors of explaining why the commencement of the proceedings of the court was delayed. The remarks of the

trial court were not prejudicial to appellant.

Appendix to ROW, Exhibit GGGG at 5.

For the foregoing reasons, the Court overrules Ground 7.

**Ground 8**—*The Wrongful Exclusion Of Even One Juror Because Of His Or Her Scruples On The Death Penalty Violates Petitioner's Rights As Guaranteed By The Fifth, Sixth And Fourteenth Amendments To The United States Constitution.*

 Morales alleges in the claim asserted in Ground 8 that Juror Betchik was wrongfully excused for cause on the basis of the fact that Betchik was not in favor of the death penalty. Respondent again argues that this claim was procedurally defaulted because it was not raised on direct appeal. Morales again contends that the Eighth District decided this claim on the merits in subsequent proceedings. The Court again agrees with Morales on this point, and thus concludes that the claim has not been procedurally defaulted.

The Eighth District concluded with respect to this claim:

> Betchik's failure to comprehend the business of the court would have provided a sufficient basis for excusing him. Furthermore, reading his responses in context, it is evident that Betchik clearly indicated to the court that he would not follow the instructions of the trial judge and would not consider fairly the imposition of a sentence of death in this case. Under the circumstances, the record does not demonstrate an abuse of discretion by the trial court by excusing juror Betchik for cause.
>
> As a consequence, the trial court's having excused Betchik as a juror is not an appropriate basis for delayed reconsideration.

Appendix to ROW, Exhibit GGGG at 5–8.

The Court concludes that Morales fails to show that this Court may grant a writ with respect to this claim. He fails to

show that he is entitled to a writ pursuant to § 2254(d)(1) or (d)(2).

For the foregoing reasons, the Court overrules Ground 8.

**Ground 10**—*The Trial Court Committed Prejudicial Error In Limiting The Testimony Of The Defense Psychologist And In Allowing The Prosecutor To Improperly Cross–Examine This Expert, In Violation Of Petitioner's Rights As Guaranteed To Him By The Fifth, Sixth And Fourteenth Amendments To The United States Constitution.*

In the claim asserted in Ground 10, Morales alleges that "[w]hen the trial court allows the prosecutor to undermine the credibility of a defense expert, [sic] through improper questioning a capital defendant is denied the right to present a defense." Traverse at 121.

Respondent contends that this claim should have been raised on direct appeal but was not, and thus is procedurally defaulted. Morales raised the claim in the Petition in the Eighth District, which held that the claim was barred pursuant to the *Perry* res judicata rule. Morales asserts, however, that the claim was decided on the merits by the Eighth District in the *Murnahan* proceeding. *See* Traverse at 124. The Court agrees with Morales. *See* Appendix to ROW, Exhibit GGGG at 9–11.

Upon review of the Eighth District's adjudication of the merits of the claim asserted in Ground 10, the Court concludes that the adjudication of this claim by the Eighth District did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. *See King,* 192 F.3d at 520. Although Morales cites and relies upon two United States Supreme Court decisions. *Crane* and *Washington, see* Traverse at 122–23, which were clearly established Federal law by the time of the Eighth District's 1993 decision in Morales' *Murnahan* proceedings, this Court concludes that those two decisions do not clearly and directly support Morales' arguments regarding this claim. .

Nor did the Eighth District's adjudication of this claim result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2).

The Eighth District specifically addressed each discrete argument raised by Morales' *Murnahan* counsel with respect to Dr. Politzer's trial testimony, and concluded that "[t]hese circumstances do not demonstrate a deficiency on the part of appellate counsel for not having assigned errors arising from Dr. Politzer's testimony. As a consequence, the trial court's rulings regarding the testimony of Dr. Politzer are not an appropriate basis for delayed reconsideration." *See* Exhibit GGGG at 9–11.

For the foregoing reasons, the Court overrules Ground 10.

**Ground 11**—*The Use Of Erroneous Information Prepared By An Employee Later Discharged [sic] His Position Denies A Defendant A Fair Trial And Due Process As Guaranteed By The Sixth And Fourteenth Amendments To The United States Constitution.*

In the claim asserted in Ground 11, Morales alleges that he was denied his right to a fair trial due to an alleged improper evaluation performed by an employee of the Cuyahoga County Psychiatric Clinic (the "Clinic"), who was subsequently discharged from his employment position because he did not possess proper credentials for the job.

Respondent again argues that this is a claim based upon the trial record which was not raised on direct appeal, and thus is procedurally defaulted. Morales raised this claim in the Petition in the Eighth District, which held that the claim was barred pursuant to the *Perry* res judicata rule.

Morales argues, however, that this claim "could not be raised on direct appeal since

the information regarding Mr. Thompson [the employee of the Clinic] was not uncovered until the post-conviction investigation." Traverse at 129. Morales further argues that the claim:

> was properly raised in Mr. Morales' post-conviction petition since it was supported by *dehors* the record evidence and the finding by the court of appeals concerning res judicata is clearly erroneous and not supported by the record. Further, the erroneous information contained in Dr. Thompson's report would not have been obvious to defense counsel, since he failed to investigate the penalty phase of this case (see First Ground for Relief). There is no default concerning this issue.

*Id.*

The Court observes that Morales failed to raise this particular claim in any proceeding subsequent to his post-conviction relief proceeding. The claim has thus been procedurally defaulted. *Bousley,* 118 S.Ct. at 1611. Nevertheless, the Court chooses to address the merits of this claim because this is a capital case and Morales claims that this alleged error denied him a defense.

Morales alleges in the Application that the use of erroneous information prepared by Mr. Thompson denied him a fair trial and due process as guaranteed by the Sixth And Fourteenth Amendments to the federal constitution. Specifically, Morales claims that Thompson conducted an "improper evaluation" after Morales had entered a Not Guilty By Reason of Insanity Plea to his capital indictment and been examined for competency and sanity by the Clinic. *See* Application at 53. Morales further alleges that he also retained a private psychologist, Dr. Politzer, and that as part of his evaluation at the Clinic he was interviewed by Thompson, who then prepared a report. *Id.* at 54.

Morales further alleges that Thompson's report was used by Dr. Kathleen Dougherty and Dr. Politzer in evaluating Morales, and that "[t]he report prepared by Mr. Thompson contains inaccuracies about Petitioner." *Id.* Morales further alleges that Thompson was relieved of his duties at the Clinic shortly after filing his report on Morales, and that Thompson "has misrepresented himself to the Clinic and did not possess the degree he claimed." *Id.*

Finally, Morales alleges that "[n]o other social worker was involved in the case after the dismissal of Julius Thompson," and that Morales was denied the defense of Not Guilty By Reason of Insanity due to errors committed by the Clinic, and that he was prejudiced and denied a fair trial due to "this error." *Id.* In his Traverse, at 126–27, Morales additionally asserts that Thompson was not qualified to conduct his evaluation and prepare his report on Morales' "social history," and that both defense and prosecution experts in his case relied on the data contained in Thompson's report.

While it is unfortunate that Morales was evaluated by an individual who apparently was not qualified to conduct a proper evaluation. Morales has not alleged with the necessary specificity exactly how the "erroneous information" or "improper evaluation" by Thompson resulted in the violation of his federal constitutional rights. Nor has Morales sufficiently alleged and explained how the fact that no other social worker was involved in his case after Thompson was dismissed from his job, or the fact that Morales "was denied the defense of Not Guilty By Reason of Insanity due to errors committed by the Clinic," would reasonably lead this Court to conclude that Morales is therefore confined illegally and entitled to habeas relief herein.

Because Morales fails to demonstrate any "nexus" between Thompson's "improper evaluation," or his use of "erroneous information" in connection with his report concerning Morales, and Morales' confinement in alleged violation of his constitutional rights, the Court is not persuaded that Morales is entitled to an evidentiary

hearing with respect to this claim. Moreover, because the Court possesses sufficient information from the evidence in the record to determine that Thompson's alleged lack of qualifications to render a legitimate and reliable report concerning Morales did not render Morales' trial fundamentally unfair or unreliable, the Court concludes that Morales is not entitled to a writ of habeas corpus with respect to this claim.

For the foregoing reasons, the Court overrules Ground 11.

**Ground 13**—*The Trial Court's Refusal Of The Defense Requested Instruction On Voluntary Intoxication Denied Petitioner Morales The Opportunity To Defend Himself Against The Charges Levied Against Him And Violated The Fifth And Fourteenth Amendments To The United States Constitution.*

██ In the claim asserted in Ground 13, Morales alleges that he was denied his right to a fair trial when the trial court refused to instruct the jury on voluntary intoxication. He argues that "[w]hen the evidence overwhelmingly indicates that a capital defendant was intoxicated at the time the crime was committed, an instruction on voluntary intoxication is mandated." Traverse at 136.

Morales claims that Respondent "concedes" that this claim was raised in the postconviction petition in the Eighth District and held to be barred because it was not presented on direct appeal, but the Court cannot find any reference to this claim in that opinion. In any event, the claim was raised in Morales' application for delayed reconsideration, and decided by the Eighth District on the merits. *See* Exhibit GGGG at 18–20. That court's discussion of this issue is illuminating, and warrants reiteration herein:

Appellant contends that the record in this action required that the trial court give the jury the proposed instruction on voluntary intoxication and that the trial court's failure to do so over the objection of trial counsel for appellant was error.

Yet, the Supreme Court of Ohio has observed:

[T]his court has never found it necessary to promulgate a rule to regulate judges in this matter. Nor is this court well suited to make such a rule. This matter is best left to the discretion of the experienced trial judge.

*State v. Fox* (1981), 68 Ohio St.2d 53, 56, 428 N.E.2d 410.

We have reviewed the references to the record noted by appellant regarding how much alcohol appellant drank on the night Mario Trevino was murdered and regarding appellant's condition. In *State v. Toth* (1977), 52 Ohio St.2d 206, 371 N.E.2d 831, the defendant-appellant was described as "extremely intoxicated when he arrived home shortly after the time of the crime * * *." *Id.* at 211, 371 N.E.2d 831. Yet, the Supreme Court also noted that the defendant-appellant had to drive eight or nine miles from the scene of the crime to his home over five separate routes, told his common-law wife to say she had not seen him for two weeks and placed a gun under his pillow.

Because the record reflects that the appellant failed to introduce sufficient evidence concerning the issue of whether he was intoxicated at the time of the crime, there was no need to instruct the jury on the issue.

*Id.* at 212, 371 N.E.2d 831.

Our review of the record in this appeal, requires the same conclusion. Appellant walked away from Lucky's Beverage Store with Mario Trevino between 7:30 and 8:00 p.m. on March 2, 1985. Tr. 1192–97. At approximately 9:00 or 9:30 p.m., appellant knocked on the door of the home of Toni Ortiz and then ascended the steep flight of approximately twenty steps to Toni's apartment. Tr. 1215–16, 1250–51. While in the apartment appellant washed blood from his hands, asked for a towel with some ice and explained his condition as

resulting from a fight in a bar. Tr. 1220, 1252–54, 1258.

Some of Toni's neighbors came to Toni's apartment because they had seen a man who "did not belong there" going up to her apartment. Tr. 1214–15. Toni testified that appellant did not have any difficulty talking, walking or moving about and that she could detect the odor of alcohol on appellant's breath. Tr. 1253–54, 1258. One of the neighbors testified that appellant appeared "[k]ind of high, drunk." Tr. 1217, and had "[b]een drinking heavily." Tr. 1230–31.

Mario Trevino's brother Toby saw appellant between approximately 9:30 and 10:00 p.m., Tr. 1043. and Toby "smelled alcohol on him." Tr. 1046. Cleveland Police Patrol Officer Walsh spoke with appellant shortly after 10:30 p.m. that night. Tr. 1168–70. Patrol Officer Walsh also testified:

> Well, at the time we spoke with him it definitely was apparent that Mr. Morales had been consuming some alcoholic beverages that evening, which he admitted to us in the conversation. But, he was standing up straight. His speech was understandable. You know, his conduct was not disorderly.

Tr. 1170–71.

In light of the standard set forth in *Toth,* the record does not contain sufficient evidence to suggest that the trial court abused its discretion by denying the request of appellant's counsel to instruct the jury on voluntary intoxication. As a consequence, the absence of this instruction does not provide a basis for reconsideration.

Exhibit GGGG at 18–20.

The Court concludes that Morales fails to show that this Court may grant a writ with respect to this claim. He fails to show he is entitled to a writ pursuant to § 2254(d)(1) or (d)(2). *King,* 192 F.3d at 520. For the foregoing reasons, the Court overrules Ground 13.

**Ground 14**—*The State's Attorney Has An Obligation To Pursue Charges In A Fair Manner; When The State's Attorney Engages In Misconduct During The Course Of A Capital Trial, The Conviction And Death Sentence Obtained Cannot Stand.*

In the claim asserted in Ground 14. Morales lists various comments and actions by the prosecutor which allegedly rise to a level of misconduct sufficient to deprive him of a fair trial.

Respondent contends that this claim should have been raised on direct appeal but was not, and thus is procedurally defaulted. Morales raised this claim in the Petition in the Eighth District, which held that the claim was barred pursuant to the *Perry* res judicata rule. Morales asserts, however, that the claim was decided on the merits by the Eighth District in the *Murnahan* proceeding. *See* Traverse at 144. The Court agrees with Morales. *See* Appendix to ROW, Exhibit GGGG at 11–16. Ground 14 thus was not procedurally defaulted.

The Court concludes that the Eighth District adjudication of each of the discrete claims concerning prosecutorial misconduct did not result in a decision that would permit this Court to grant a writ pursuant to either § 2254(d)(1) or (d)(2). *King,* 192 F.3d at 520.

For the foregoing reasons, the Court overrules Ground 14.

**Ground 15**—*Erroneous Or Omitted Instructions In Guilt–Innocence And Penalty Phases Of A Capital Case Denied Petitioner Morales A Fair Determination Of Guilt–Innocence And Penalty In Violation Of The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.*

Ground 15 is a six-part ground for relief in which Morales asserts six claims alleging various errors made by the trial court with respect to jury instructions in the penalty phase concerning the death penalty. Morales contends that each of

these erroneous instructions "individually constitutes error," and that the "cumulative effect of these errors allowed the death sentence to be imposed arbitrarily and capriciously in violation of the Eighth and Fourteenth Amendments." Traverse at 146.

Respondent contends that this ground for relief should have been raised on direct appeal but was not, and thus is procedurally defaulted. Morales raised these claims in the Petition in the Eighth District, which held that the claims were barred pursuant to the *Perry* res judicata rule. Morales asserts, however, that the claims were decided on the merits by the Eighth District in his *Murnahan* proceedings. *See* Traverse at 154. The Court agrees with Morales. *See* Appendix to ROW, Exhibit GGGG, at 20–25.

However, even assuming *arguendo* that the trial court committed constitutional error in its instructions to the jury in each of the instances cited by Morales, a constitutional error that implicates trial procedures must be considered harmless unless it had a substantial and injurious effect or influence in the determining the jury's verdict. *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710. *Also see Gilliam*, 179 F.3d at 995. For the reasons which follow, the Court concludes that Morales has failed to show that any of these alleged errors had this effect or influence.

Morales has failed to show that there is a reasonable likelihood that the jury applied any of the challenged instructions in a way that violated the Constitution. *McGuire*, 112 S.Ct. at 482 & n. 4. The Court thus overrules all six claims asserted in Ground 15.

The Court now considers separately each of the six claims asserted in Ground 15.

1. *The trial court erred in instructing the jury that its verdict was only a recommendation.*

▆ The Eighth District found that the instruction of the trial judge to Morales'

jury that their verdict was only a recommendation was proper under Ohio law and not unconstitutional. *See* Appendix to ROW, Exhibit GGGG at 20. Morales argues herein that the instruction to the jury that a verdict of death was only a recommendation diminished "the jury's sense of responsibility for its decision in violation of the United States Supreme Court decision in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) and the Eighth and Fourteenth Amendments to the United States Constitution." Traverse at 146.

With respect to this instruction, the trial judge never diverged from Ohio law. The judge told the jury that their verdict was a recommendation—R.C. 2929.03(D)(2) says that their verdict is a recommendation

Second, in *Caldwell*, the Supreme Court held that the prosecution's statement to the jury, "Your job is reviewable.... The decision that you render [as to sentence of death] is automatically reviewable by the [Mississippi] Supreme Court," *id.* at 325–26, 105 S.Ct. 2633, was constitutionally impermissible because it led the jury to believe that the responsibility for determining the appropriateness of the death sentence rested elsewhere. *Id.* at 329–31, 105 S.Ct. 2633.

Morales' case is also distinguishable from *Caldwell* on the ground that the statements at issue in *Caldwell* concerned appellate review of the jury's sentencing decision, whereas Morales apparently complains about references to review of the jury's sentencing decision by the trial judge, not by an appellate court. The Supreme Court made no mention in *Caldwell*, or in any other of its decisions. of prohibiting accurate statements that explain to the jury the role of the trial judge in capital sentencing procedure.

The Court further distinguishes Morales' case from *Caldwell* by noting the differences between the Mississippi and Ohio statutes governing the imposition of capital sentences. The Mississippi statute

seems to place the entire sentencing burden on the jury, and the trial judge has no authority under Mississippi's capital sentencing statute to review the jury's decision. This is quite different from Ohio's capital sentencing statute, which provides that "the trial jury *shall recommend* to the court that the sentence of death be imposed on the offender." Ohio Revised Code 2929.03(D)(2) (emphasis added).

The Supreme Court in *Caldwell* essentially held that it is not constitutional to lead a jury to believe that it does not bear the entire burden of determining a defendant's fate when, in fact, the state's laws expressly provide that the jury does bear that burden. *Id.* at 329, 105 S.Ct. 2633. Since Ohio juries do not bear the entire burden of determining a defendant's fate, it is therefore not unconstitutional to instruct them about what portion of that burden they do bear.

For the foregoing reasons, the Court overrules the first claim in Ground 15.

### 2. The trial court erred in instructing the jury concerning sympathy.

█ In this claim. Morales alleges that the trial court improperly instructed the jurors that sympathy could play no part in their deliberations. The Eighth District rejected the argument based upon *Eddings v. Oklahoma.* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). that Morales asserts herein, and instead found that another U.S. Supreme Court decision, *California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), was controlling precedent under the circumstances of this case. *See* Exhibit GGGG at 21–22. This Court agrees.

In *Brown*, the Supreme Court decided that an instruction that the jury should not be swayed by mere sympathy (as well as by other considerations) is proper. *Id.* at 539, 543–44, 107 S.Ct. 837.

For the foregoing reasons, the Court overrules the second claim in Ground 15.

### 3. The trial court erred in giving the jury the statutory definition of reasonable doubt in the penalty phase.

In this claim. Morales argues that the definition of reasonable doubt given by the trial court "necessarily affects the way the jury applies the weighing process," and that in this case, "the definition was erroneous." Traverse at 149. Morales contends that "[w]hen applied as part of the weighing formula, the instruction directed a verdict of death." *Id.*

The Eighth District rejected this claim in light of the holding of the Ohio Supreme Court in *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264, para. 8 of syl (1984) (the standard of proof in a capital prosecution is proof beyond a reasonable doubt as defined in R.C. 2901.05, and not proof beyond all doubt). This constitutional claim was addressed on the merits by the Eighth District, yet Morales fails to show that this Court may grant a writ with respect to this claim. or that he is entitled to a writ pursuant to § 2254(d)(1) or (d)(2).

For the foregoing reasons. the Court overrules the third claim in Ground 15.

### 4. The trial court erred in instructing the jury on all statutory factors, even those not present in Mr. Morales' case.

█ In this claim, Morales argues that the trial court erred when it instructed the jury to consider all seven mitigating factors contained in R.C. § 2929.04(B), even though Morales "adduced no evidence as to any of those statutory factors during mitigation." Traverse at 150. Morales contends that "the only logical result" of this instruction was "a death sentence." *Id.* at 150–51.

The Eighth District held, however, that the case relied upon by Morales in this regard, *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, "requires the opposite conclusion." Exhibit GGGG at 23. The Eighth District also held that R.C. 2929.04(B) states that the trial jury

"shall" consider the mitigating factors, and that in light of *DePew* and that statute, the instruction did not provide a basis for delayed reconsideration. *Id.* at 23–24.

The Court finds that this claim was addressed on the merits by the Eighth District, yet Morales has not shown that this Court may grant a writ with respect to the claim, or that he is entitled to the writ under § 2254(d).

For the foregoing reasons, the Court overrules the fourth claim in Ground 15.

### 5. The trial court erred in defining the word "outweigh" as "more important than."

■ In this claim. Morales challenges the trial court's definition of the word "outweigh." as meaning "more than, to be more important than." in the context of the trial court's instruction to the juror that the aggravating circumstance in his case must "outweigh" the mitigating factors in his case in order for the death penalty to be imposed. Traverse at 151–52. Morales appears to suggest that this instruction placed an unreasonable burden on him to prove that the mitigating evidence he presented is "more important than" the life that he was convicted of taking. *See Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

However, in *Boyde,* the Supreme Court held that there is no constitutional basis for the notion that a capital jury must have unfettered discretion to decline to impose the death penalty, even if it decides that the aggravating circumstances "outweigh" the mitigating factors. *Id.* at 371, 110 S.Ct. 1190.

The Eighth District relied upon *Jenkins,* 15 Ohio St.3d at 172 n. 9, 473 N.E.2d 264, which held that an instruction given to a capital jury in the penalty phase defining the word "outweigh" identically to the way

Morales' trial judge defined it was proper, in concluding that this instruction did not provide a basis for delayed reconsideration. Exhibit GGGG at 24. This claim was decided on the merits by the State court, yet Morales has failed to show that he is entitled to a writ with respect to this claim. *King,* 192 F.3d at 520.

For the foregoing reasons, the Court overrules the fifth claim in Ground 15.

### 6. Definition of mitigating factors.

■ In this claim. Morales argues that the trial court committed error in failing to give the correct instruction, and in giving instead an erroneous instruction, with respect to the definition of the phrase "mitigating factors." [15] Traverse at 152–53. Morales asserts that in *State v. Lawrence,* 44 Ohio St.3d 24, 28–29, 541 N.E.2d 451 (1989), an instruction identical to that given in his trial was utilized. and found to be error by the Ohio Supreme Court, which held that "the use of the word 'blame' in the instruction improperly related the mitigating factors to [the defendant's] culpability in violation of [*State v.*] *Holloway,* [38 Ohio St.3d 239, 242, 527 N.E.2d 831 (1988).]" Traverse at 152–53.

However, this Court finds that Morales has not demonstrated that the decision of the trial court to give the instruction which it gave was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. This Court thus may not grant a writ with respect to this claim. *Nevers,* 169 F.3d at 357.

For the foregoing reasons, the Court overrules the sixth claim in Ground 15.

---

**15.** The trial court defined "mitigating factors" for the jury as follows:

Mitigating factors are factors which, while they do not justify or excuse the crime of aggravated murder, nevertheless may be considered by you as extenuating, lessening, weakening, excusing to some extent, or reducing the degree of the defendant's blame.

**Ground 16**—*The Determination Of The Penalty To Be Imposed Upon Petitioner Morales Was Skewed By The Readmission Of All Of The Exhibits From The Guilt–Innocence Phase Without Any Determination Of Relevancy To The Penalty Proceedings Thereby Resulting In An Unreliable Sentence In Violation Of The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.*

 In the claim asserted in Ground 16, Morales alleges that it was error for the trial court to admit into evidence at the penalty phase of Morales' trial all of the exhibits which had been admitted into evidence during the guilt/ innocence phase, pursuant to a prosecution motion. *See* Traverse at 156. In particular, Morales specifically objects to the trial court's admitting into evidence for the jury's consideration during penalty phase deliberations the photographs of the victim at the crime scene and at the autopsy, especially because this evidence "does not relate to either the aggravating circumstance [the kidnapping] or mitigating factors." *Id.*

The Eighth District considered this claim on the merits. *See* Appendix to ROW, Exhibit GGGG at 32–34. In particular, the Eighth District considered the argument which Morales asserts herein that the photographs about which he complains "pertain solely to the aggravated murder" rather than to the aggravating circumstance (kidnapping) that Morales was found guilty of committing. *Id.* at 33. The Eighth District rejected this argument, and concluded that "[c]ertainly, photographs of injuries such as those suffered by the victim in this case are relevant to several of the elements of kidnapping—the aggravating circumstance." *Id.* at 34.

Morales has failed to show that the adjudication of this claim by the Eighth District resulted in a decision which permits

this Court to grant a writ pursuant to 28 U.S.C. § 2254(d). Moreover, a violation of State law (such as the rules of evidence) is not cognizable in a federal habeas proceeding unless the violation is of constitutional magnitude. *See, e.g., Harris,* 465 U.S. at 41, 104 S.Ct. 871. Even assuming *arguendo* that Morales has demonstrated that the trial court violated State law in this regard, he has failed to show that the violation is of constitutional magnitude.

For the foregoing reasons, the Court overrules Ground 16.

**Ground 17**—*The Trial Court's Failure To Specify, In Its Written Sentencing Opinion, Why It Felt The Aggravating Circumstance Outweighed The Mitigating Factors In This Case Violated Petitioner's Rights As Guaranteed By The Fifth, Sixth And Fourteenth Amendments To The United States Constitution.*

In the claim asserted in Ground 17, Morales alleges that the trial court's written opinion required by Ohio Revised Code § 2929.03 did not comply with the mandates of that statute, and that this "failure" has denied Morales "his rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution."[16] Traverse at 161. In particular, Morales argues that the trial court did not address by specific findings the reason(s) it concluded the aggravating circumstance was sufficient to outweigh the mitigating factors. *Id.*

Morales further contends that it is reversible error in the penalty phase for the trial court to have failed to spell out it weighing process concerning the aggravating circumstances as compared with the mitigating factors. "particularly in light of the fact that the trial court did not even have a valid aggravating circumstance specification before it to consider, there

---

**16.** It is unknown to the Court why Morales claims in this Ground for Relief (as stated above) a violation of the Fifth, Sixth and Fourteenth Amendments, yet in the discussion of this Ground for Relief, *see* Traverse at 161, claims a violation of the Eighth and Fourteenth Amendments.

having been no principal offender finding by the jury, as set forth in the Fifth Ground for Relief." Traverse at 162.

The Court first notes that it rejected *supra* the claim asserted in Ground 5 that the sentencing of Morales by the trial court to the death penalty without the jury having first found him guilty of being the principal offender violated his constitutional rights. For the reasons stated in the Court's discussion of Ground 5, and for the additional reason that "the aggravating circumstance found to exist herein was kidnapping," *see State v. Morales,* 32 Ohio St.3d at 261, 513 N.E.2d 267, the Court rejects Morales' contention that the trial court did not have a "valid aggravating circumstance specification before it to consider," Traverse at 162. when it issued its written opinion as to why the aggravating circumstance of the predicate felony of kidnapping outweighed the mitigating factors (none).

The Court further concludes that this claim has not been procedurally defaulted, because the Eighth District addressed the claim on the merits. *See* Appendix to ROW, Exhibit GGGG at 25–26. The Eighth District found that the trial court specifically found in its written opinion that no evidence was "sufficiently demonstrated" at trial of any of the mitigating factors set forth in R.C. 2929.04(B), and that the trial court "also considered that appellant had been drinking on the day in question." *Id.* at 26.

Morales has not demonstrated that the adjudication of this claim by the Eighth District resulted in a decision which permits this Court to grant a writ pursuant to 28 U.S.C. § 2254(d). For the foregoing reasons, the Court overrules Ground 17.

**Ground 18**—*The Appellate Review Provided By The Ohio Court Of Appeals Failed To Meet The Requirements Of The Eighth Amendment.*

In the claim asserted in Ground 18, Morales alleges that he was denied "meaningful appellate review procedures" on direct appeal in violation of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Traverse at 165. In particular, Morales argues that the concise supplemental journal entry issued by the Eighth District in his case pursuant to Ohio Revised Code § 2929.05 does not "comply with the case law of the United States Supreme Court." *Id.*

Initially, the Court concludes that Respondent's argument that Morales procedurally defaulted this claim when he did not raise it on direct appeal in the Supreme Court of Ohio is not well-taken. The Court so concludes because Morales subsequently raised this claim in his motion for rehearing of direct appeal as of right in the Supreme Court of Ohio, and asserted in that proceeding that the claim had not been raised on direct appeal because of the ineffective assistance of appellate counsel. Because the Supreme Court denied the claim on the merits, *see State v. Morales,* 68 Ohio St.3d 1426, 624 N.E.2d 1064 (1994), the claim has not been procedurally defaulted.

Nevertheless, because the Supreme Court of Ohio adjudicated this claim on the merits, a writ cannot be granted with respect to the claim unless Morales makes one of the showings required under either 28 U.S.C. § 2254(d)(1) or 28 U.S.C. § 2254(d)(2).

With respect to § 2254(d)(1), although Morales cites to *Gregg, supra,* he fails to show how the Ohio Supreme Court's adjudication of this claim is contrary to, or involved an unreasonable application of, *Gregg.* The Court reaches the identical conclusion with respect to the decisions of the U.S. Supreme Court in *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), *Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), *California v. Ramos,* 463 U.S. 992, 999, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), *Parker v. Dugger,* 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), and *Clemons v. Mississippi,* 494 U.S. 738, 749,

110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). *See* Traverse at 168–69.

With respect to § 2254(d)(2), the Court concludes that Morales has failed to show that the adjudication of this claim by the Supreme Court of Ohio resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The Court therefore may not grant a writ with respect to this claim because Morales has not made the showing required by § 2254(d)(2).

For the foregoing reasons, the Court overrules Ground 18.

## VI. ANALYSIS OF REMAINING GROUNDS FOR RELIEF

At this juncture, the Court now considers on the merits those grounds for relief asserted in the Application which Respondent does not contend have been procedurally defaulted.

*Ground 2—Petitioner Morales Was Denied The Right To The Effective Assistance Of Counsel On His Direct Appeals As Of Right In Violation Of The Due Process Clause Of The Fourteenth Amendment To The United States Constitution.*

In the claim asserted in Ground 2. Morales passionately argues that his appellate counsel on direct appeal to the Eighth District and the Ohio Supreme Court, Charles Laurie, raised only seven claims in the Eighth District and the same seven claims in the Ohio Supreme Court. *See* Traverse at 79–81. Morales points to at least twenty (20) more issues which his appellate counsel should have raised on direct appeal, *id.* at 81–83, and which his post-conviction relief and *Murnahan* counsel in fact did raise. However, none of these issues but one was found to be meritorious by the Ohio courts.[17]

In considering the present ground for relief, this Court has not found any of Morales' claims asserted therein to be meritorious. Accordingly, the Court overrules Ground 2.

*Ground 3—Alfred J. Morales Was Convicted Of Aggravated Murder, With The Underlying Felony Of Kidnapping And Of The Separate Crime Of Kidnapping Even Though The State Failed To Present Sufficient Evidence To Prove Each Element Beyond A Reasonable Doubt In Violation Of The Eighth And Fourteenth Amendments To The United States Constitution.*

In the claim asserted in Ground 3, Morales alleges that the evidence was insufficient to prove the offense of kidnapping. Morales contends that the prosecution failed to present sufficient evidence to prove each element of the offenses of which he was convicted beyond a reasonable doubt, in violation of the Eighth and Fourteenth Amendments of the federal constitution.

Morales also argues that a conviction based upon evidence which is not sufficient to prove guilt beyond a reasonable doubt violates the Due Process Clause of the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See* Traverse at 86. However, relief for violations of federal law will be granted only if the violation rises to the level of a "fundamental defect which inherently results in a complete miscarriage of justice." *Reed*, 114 S.Ct. at 2297.

Morales specifically claims that there was no evidence that Morales restrained the liberty of Mario, or coerced Mario from the place he had been, and that the fact that Mario was only twelve does not negate the State's obligation to prove this element of the offense of kidnapping. *See* Traverse at 89. Morales argues that the State's contention that it did not have to

---

**17.** That issue was the failure of the State to elect one of the two counts of aggravated murder upon which Morales was convicted for sentencing purposes. *See* Exhibit GGGG at 16–18 (sub-claim G).

prove the elements of "kidnapping" when the victim is under the age of thirteen is "wrong," relying on *Chatwin v. United States,* 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946) for support for this proposition. *Id.* at 90.

However, the Ohio Supreme Court stated the following in the syllabus of the instant case:

> The kidnapping of a child under the age of thirteen, in violation of R.C. 2905.01, by any means including deception, for the purpose of committing any felony or inflicting serious physical harm on the victim, is sufficient to satisfy the specification and aggravating circumstance of kidnapping for aggravated murder pursuant to R.C. 2903.01(B) and 2929.04(A)(7).

*State v. Morales,* 32 Ohio St.3d 252, 513 N.E.2d 267. It could not be more clear that the kidnapping can be "by any means," in order to be sufficient to satisfy the specification and aggravating circumstance of kidnapping for aggravated murder pursuant to R.C. 2903.01(B) and 2929.04(A)(7). *Id.* Therefore, the Court agrees with Respondent that "[t]he minimum standards of *Jackson, supra,* have been met and exceeded." ROW at 48.

The Court finds that *Chatwin* is distinguishable factually from the instant case, and thus does not control its outcome. Moreover, Morales fails to show that the adjudication of this claim by the Supreme Court of Ohio resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Morales also fails to show that said adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d)(1) & (2).

For the foregoing reasons, the Court overrules Ground 3.

**Ground 9**—*The Trial Court Committed Prejudicial Error By Denying Petitioner's Motion For Mistrial After An Emotional Outburst By The Decedent's Brother In Front Of The Jury At Trial Of This Case, In Violation Of Petitioner's Rights As Guaranteed To Him By The Fifth, Sixth And Fourteenth Amendments To The United States Constitution.*

In the claim asserted in Ground 9, Morales alleges that when there is an outburst in the courtroom by a member of the victim's family concerning the credibility of a defense witness, the trial court should grant a mistrial because a defendant's right to a fair trial can no longer be guaranteed. *See* Traverse at 118.

In particular. Morales cites to a portion of the trial testimony of Morales' father, during which Mario's brother. Jesse Trevino, interjected and stated in the presence of the jury that Morales' father was "lying" in response to a question which had been put to him. *Id.* Morales contends that the defense motion for a mistrial made in response to the aforesaid outburst should have been granted, because "[u]nder the circumstances of this case, a mistrial should have been granted for it was highly prejudicial for decedent's brother to call Petitioner's father a liar in front of the jury." *Id.* at 119. Morales contends that this outburst by the brother of the victim materially affected the outcome of the case, and interfered with Morales' right to a fair trial by an impartial jury. *Id.*

Respondent contends that because the trial court determined that the issue presented by the question to Morales' father was "immaterial, because it's a side issue," and because the trial court also determined that the outburst was "very, very short," the conclusion of the trial court that there was absolutely no prejudice to Morales caused by the outburst was proper. *See* ROW at 49. Respondent further contends that the trial court therefore properly overruled the motion for mistrial. *Id.* at 49–50. Finally, Respondent con-

tends that because the trial court immediately issued a cautionary instruction to the jury to disregard the outburst, "[t]he issue then becomes whether the trial court erred in determining that the outburst influenced the jury so as to deprive Morales of a fundamentally fair trial." *Id.* at 50.

The Supreme Court of Ohio decided the very issue before this Court on the merits after due consideration of the constitutional argument now pressed by Morales. *See State v. Morales*, 32 Ohio St.3d at 254–255, 513 N.E.2d 267. The Supreme Court concluded that Morales had produced no "clear, affirmative evidence" that the trial court's determination that the outburst deprived Morales of a fair trial by improperly influencing the jury. *Id.* at 255, 513 N.E.2d 267.

Respondent finally asserts that the Ohio Supreme Court

reasonably applied established Supreme Court precedent to determine that any error did *not* rise to the level of a constitutional violation. Thus, said decision is entitled to a presumption of correctness under 2254(d), and Morales has failed to meet his burden under Section 2254(d). As such, Morales' **ninth (9th)** ground for relief should be denied.

ROW at 51. The Court agrees with Respondent. The Court may not grant a writ with respect to this ground for relief. *King*, 192 F.3d at 520.

For the foregoing reasons, the Court overrules Ground 9.

**Ground 12**—*The Admission Of Excessive, Repetitive, Cumulative Gruesome Photographs Of The Victim Prejudices A Capital Defendant's Right To A Fair Determination Of Guilt Or Innocence And Penalty Determination As Guaranteed By The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.*

In the claim asserted in Ground 12, Morales alleges that the admission of thirty-one gruesome photographs of a single victim is excessive and denied him (a

capital defendant) a fair trial. *See* Traverse at 131. In particular, Morales asserts that "[m]any of the photographs were of the victim's head which illustrated what the State prosecutor described as a 'partial scalping.' These pictures were particularly offensive in light of the fact that Petitioner is a full-blood Native American." *Id.*

While Morales certainly paints a vivid picture of the potential error inherent in the display of an "excessive" number of gruesome photographs, the Supreme Court of Ohio considered this issue in Morales' direct appeal on the merits and found no error. The Supreme Court noted that the mere fact that a photograph is gruesome or horrendous is not sufficient to render it "per se inadmissible." *State v. Morales*, 32 Ohio St.3d at 258, 513 N.E.2d 267. The Supreme Court also noted that the photographs were "illustrative" of the victim's injuries, the scene of the murder, the victim's body before and during the coroner's examination, or the testimony of prosecution witnesses "concerning the murder site, the cause of death and appellant's liability therefor." *Id.* "Further, the photographs concerning the victim's injuries were probative with regard to the showing of intent and deliberation on the part of appellant [.]," "were neither repetitive nor cumulative in nature [.]," and "their probative value outweighed the danger of unfair prejudice to appellant [,]." *Id.*

Nevertheless, Morales argues herein that the admission of the photographs "allows [sic] the jury to decide this case on the basis of caprice or emotion, rather than from weighing the statutory aggravating circumstances and the mitigating factors in the capital sentencing procedure, in violation of *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 .(1977) (any decision to impose the death penalty be, and appear to be [,] based on reason rather [than] caprice or emotion.)" *See* Traverse at 133. The Court does not agree.

The Court believes that the trial testimony of the prosecution witnesses concerning the cause of Mario's death, and the portion of Morales' own confession concerning the manner in which he literally beat Mario to death, left the scene and—some time later—returned to the scene, observed that Mario was still breathing, but callously departed the scene a final time, leaving Mario to die, were sufficient to allow a reasonable jury to conclude that the death sentence was an appropriate penalty in this case. It thus does not appear that the number and gruesomeness of the photographs could constitute reversible error under the circumstances of this case.

Moreover, even if the Court shared Morales' view concerning the photographs, Morales has nonetheless failed to show that the decision of the Supreme Court of Ohio with respect to the claim asserted in Ground 12 was "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Nevers*, 169 F.3d at 362. Therefore, a writ may not issue with respect to Ground 12. *Id.*

For the foregoing reasons, the Court overrules Ground 12.

**Ground 19**—*The Statutory Provisions Governing The Ohio Capital Punishment Scheme Violate The Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution, As Well As The Supremacy Clause Of Article VI Of The United States Constitution. This Scheme Is Unconstitutional On Its Face.*

In the claim asserted in Ground 19, Morales alleges that Ohio's capital punishment scheme is unconstitutional for a myriad of reasons. None of Morales' arguments have merit. Morales acknowledges at the beginning of his dissertation that the U.S. Supreme Court has held in *Gregg*, 428 U.S. at 153, 96 S.Ct. 2909 that the federal constitution is not violated through the imposition of the death penalty. *See* Traverse at 171.

Morales additionally claims, however, that "certain safeguards must be followed in order to avoid an unconstitutional application of that penalty," and that Ohio's statute does not satisfy those constitutional mandates. *Id.* The Court concludes, however, that Morales has failed to show that any of his arguments with respect to "unconstitutional application" of the death penalty in Ohio is supported by any decision of the U.S. Supreme Court.

For the foregoing reasons, and for the reasons advanced by Respondent, *see* ROW at 57–69, the Court overrules Ground 19.

## VII. EVIDENTIARY HEARING

With respect to Morales' request for an evidentiary hearing with respect to certain of the claims asserted in the Application, the enactment of the AEDPA, which applies in this case, substantially altered the standards used by federal courts to determine whether a request for an evidentiary hearing should be granted.

Prior to the enactment of the AEDPA, the disposition of a federal habeas petitioner's request for an evidentiary hearing was controlled by Rule 8(a) of the Rules Governing § 2254 Cases, and by the Supreme Court's decision in *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), as modified by *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). *Townsend* defined the circumstances in which a federal evidentiary hearing was mandatory, while emphasizing that federal courts retain discretion in many cases to grant or deny a hearing. *Townsend*. 372 U.S. at 312–13, 83 S.Ct. 745.

The *Townsend* Court held that a federal court is empowered to grant an evidentiary hearing if "an applicant for a writ of habeas corpus allege[d] facts which, if proved, would entitle him to relief." 372 U.S. at 312, 83 S.Ct. 745. The Court

concludes that even under this more "lenient" standard of *Townsend,* Morales is not entitled to an evidentiary hearing with respect to any of the grounds asserted in the Application, since he has failed to allege facts which, if proved, would entitle him to relief.

Under the AEDPA, a determination of a factual issue made by a State court shall be presumed to be correct, and the applicant for a writ of habeas corpus has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court concludes that Morales has not met this burden, nor has he otherwise shown that he is entitled to an evidentiary hearing pursuant to § 2254(e)(2).

## VIII. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Alfred Morales' Petition Under 28 U.S.C. § 2254 For A Writ Of Habeas Corpus For A Person In State Custody (Dkt.# 12). Accordingly, this action is hereby **DISMISSED. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate** of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R.App. P. 22(b).

IT IS SO ORDERED.

## JUDGMENT

In accordance with the Memorandum Opinion and Order of March 28, 2000, Petitioner Alfred Morales' Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus (Dkt.# 12) is hereby DENIED.

The Court certifies, there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon the Motion of the Petitioner, Alfred Morales ("Morales") to alter or amend (Dkt.# 50).

## FACTS

The underlying facts of this case and its procedural history have been thoroughly set forth in this Court's previous opinions. There is no need to repeat either the facts or the procedural history a third time.

## ANALYSIS

The Petitioner has moved this Court to alter or amend its judgment pursuant to Federal Rule of Civil Procedure 59(e). FED. R. CIV. P. 59(e) states that "Any motion to alter or amend judgment shall be filed no later than 10 days after the entry of the judgment." The Petitioner filed his Motion to Alter or Amend (Dkt.# 50) on April 11, 2000, within ten days of the date of the Memorandum Opinion and Order (Dkt.# 48) which was issued on March 29, 2000.

The Sixth Circuit has held that a Rule 59(e) motion "may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *Gencorp, Inc. v. American International Underwriters,* 167 F.3d 249, 275 (6th Cir. 1999) (citations omitted). The Petitioner has asserted that this Court has committed clear errors of law, that there is newly discovered evidence in this case, and that reconsideration of the Court's decision would prevent manifest injustice. Furthermore, the Court has reviewed two very recent United States Supreme Court cases, *Williams v. Taylor,* —— U.S. ——, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000), and *Williams v. Taylor,* —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), which were filed on April 18, 2000, after this Court's decision in this matter. As such, to prevent manifest injustice, the Court

shall revisit the arguments raised by the Petitioner in his Motion to Alter or Amend (Dkt.# 50) in the context of the most recent Supreme Court cases where applicable. The Court also shall consider the impact of the newly discovered evidence the Petitioner has submitted.

The Petitioner has asserted the following arguments in support of his Motion: (1) the Court improperly denied the Petitioner discovery and an evidentiary hearing; (2) the Court has erroneously interpreted 28 U.S.C. § 2254(d); (3) trial counsel was ineffective during the penalty phase for failing to prepare or investigate possible mitigation evidence, and such failure was not a strategic or tactical decision; (4) the Petitioner is entitled to relief because the prosecution illegally suppressed *Brady* material which has only very recently been discovered; (5) the Court prematurely denied the Petitioner's certificate of appealability.

**(1) The Court improperly denied the Petitioner discovery and an evidentiary hearing.**

28 U.S.C. § 2254(e)(2) states:

**If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-**

(A) the claim relies on -

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Supreme Court in *Williams,* —— U.S. ——, 120 S.Ct. 1479, 146 L.Ed.2d 435,

held that "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 1488. Furthermore, the Court reasoned that "The question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of 'failed' is to ensure the prisoner undertakes his own diligent search for evidence." *Id.* at 1490. Importantly, to satisfy the diligence requirement, a petitioner "at a minimum [must] seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.*

The diligence requirement exists to preserve comity between the State and Federal courts. "Comity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Williams,* —— U.S. at ——, 120 S.Ct. at 1490 (*quoting O'Sullivan v. Boerckel,* 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)). Additionally, the Court explained that

For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met. Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings. Yet comity is not served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was unable

to develop his claim in state court despite diligent effort. In that circumstance, an evidentiary hearing is not barred by § 2254(e)(2).

*Id.* at 1491. The Petitioner sought an evidentiary hearing in state court, which was denied, and thereby satisfied the diligence requirement of § 2254(e)(2). Accordingly, he does not have to "show compliance with the balance of the subsection's requirements," and the Court may hold an evidentiary hearing. *Id.*

 However, as the Fifth Circuit persuasively held in *McDonald v. Johnson,* 139 F.3d 1056 (1998), "even if [a petitioner's] claim is not precluded by § 2254(e)(2), that does not mean he *is* entitled to an evidentiary hearing—only that he *may* be." *Id.* at 1059–60. (Emphasis original.) The Fifth Circuit reasoned that "Consistent with AEDPA's goal of streamlining the habeas process, § 2254(e)(2) specifies the situations where evidentiary hearings are *allowed,* not where they are *required.*" *Id.* at 1060. (Emphasis original.) The Fifth Circuit further explained that the determination whether an evidentiary hearing is warranted "is committed to the district court's discretion pursuant to Rule 8 of the Rules Governing § 2254 Cases." [1] *Id.* "In determining whether an evidentiary hearing is proper, the district court may expand the record and consider affidavits, exhibits, or other materials that cast light on the merits of the petition." *Id. See also Cardwell v. Greene,* 152 F.3d 331, 337–38 (4th Cir. 1998) (Where the district court expands the record to include documentary evidence "the need for an evidentiary hearing may be obviated."). The Court has reconsidered its decision to deny the Petitioner an evidentiary hearing, and finds no reason to alter or amend the Memorandum

Opinion filed on March 29, 2000 (Dkt.# 48). However, the Court will expand the record to include the suppressed Cuyahoga County Coroner's reports and the affidavit of Richard Damiani which were not previously part of the record of this case. '

## (2) The Court has erroneously interpreted 28 U.S.C. § 2254(d).

Recently, the United States Supreme Court in *Williams v. Taylor,* —— U.S. ——, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), analyzed and interpreted 28 U.S.C § 2245(d). The question presented to this Court, and that which was considered in *Williams,* was whether the state courts unreasonably applied the law under § 2254(d)(1). As an initial matter, this Court must revisit the standard of review under § 2254(d)(1) pursuant to the Supreme Court's analysis in *Williams.* Justice O'Connor, writing for a majority of the Court, explained § 2254(d)(1) as follows:

The term 'unreasonable' is no doubt difficult to define. That said, it is a common term in the legal world and, accordingly, federal judges are familiar with its meaning. For purposes of today's opinion, the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law.

\* \* \* \* \* \*

In 2254(d)(1), Congress specifically used the word 'unreasonable,' and not a term like 'erroneous' or 'incorrect.' Under 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

---

1. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts states:

 If the petition is not dismissed at a previous stage in the proceedings, the judge, after the answer and the transcript and record of state court proceedings are filed, shall,

upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require...

law erroneously or incorrectly. Rather, that application must also be reasonable.

\* \* \* \* \* \*

Under 2254(d)(1), the writ may issue ... if ... the state-court adjudication resulted in a decision that 'involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States.'

\* \* \* \* \* \*

Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams,* —— U.S. at ——–——, 120 S.Ct. at 1522–1523.

Although the Supreme Court clarified the standard of review under 2254(d)(1), its analysis of the "unreasonable application" language does not change the outcome in this case.

**(3) Trial counsel was ineffective during the penalty phase for failing to prepare or investigate possible mitigation evidence, and such failure was not a strategic or tactical decision.**

Ineffective assistance of counsel claims are adjudicated under the standard set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which was clearly "established Federal law as determined by the Supreme Court of the United States" at the time the state court considered the Petitioner's claim of penalty phase ineffective assistance of counsel. In *Strickland,* the Court held,

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not function-

ing as 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the results unreliable.

*Id.* at 687, 104 S.Ct. 2052.

The Court explained that "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. Furthermore, the Court reasoned that to show prejudice, the Petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." *Id.* at 691–92, 693, 104 S.Ct. 2052. Rather, in the context of a death penalty case, the Petitioner must show that "there is a reasonable probability that, absent the errors, the sentence—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695, 104 S.Ct. 2052. A court which undertakes the prejudice inquiry "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696, 104 S.Ct. 2052.

The facts of the case *sub judice* are strikingly similar to those in *Williams, supra,* where the Supreme Court held that the petitioner was denied effective assistance of counsel during the penalty phase of his trial because his counsel failed to investigate or present available mitigation

evidence.[2] *See also Glenn v. Tate*, 71 F.3d 1204 (6th Cir.1995).[3] In *Williams*, Justice Stevens, writing for a majority of the Court explained how the Virginia Supreme Court unreasonably applied the *Strickland* test for ineffective assistance of counsel. Justice Stevens' analysis is best left in his own words:

In the instant case, it is undisputed that Williams had a right—indeed, a constitutionally protected right—to provide the jury with the mitigating evidence that his trial counsel either failed to discover or failed to offer.

\* \* \* \* \* \*

Unlike the Virginia Supreme Court, the state trial judge ... relied on our opinion in *Strickland* as stating the correct standard for judging ineffective-assistance claims.

\* \* \* \* \* \*

We are ... persuaded that the Virginia trial judge correctly applied both components of that standard to Williams' ineffectiveness claim. Although he concluded that counsel competently handled the guilt phase of the trial, he found their representation during the sentencing phase fell short of professional standards—a judgment barely disputed by the State in its brief to this Court. The record establishes that counsel did not begin to prepare for that phase of the proceeding until a week before the trial. They failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish child-

2. The facts of Williams are as follows:

 At Williams' sentencing hearing, the prosecution proved that Williams had been convicted of armed robbery in 1976 and burglary and grand larceny in 1982. The prosecution also introduced the written confessions that Williams had made in April. The prosecution described two auto thefts and two separate violent assaults on elderly victims perpetrated after the Stone murder. On December 4, 1985, Williams had started a fire outside one victim's residence before attacking and robbing him. On March 5, 1986, Williams had brutally assaulted an elderly woman on West Green Street—an incident he had mentioned in his letter to the police. That confession was particularly damaging because other evidence established that the woman was in a 'vegetative state' and not expected to recover. Williams had also been convicted of arson for setting a fire in the jail while awaiting trial in this case. Two expert witnesses employed by the State testified that there was a 'high probability' that Williams would pose a serious continuing threat to society.

 The evidence offered by Williams' trial counsel at the sentencing hearing consisted of the testimony of Williams' mother, two neighbors, and a taped excerpt from a statement by a psychiatrist. One of the neighbors had not been previously interviewed by defense counsel, but was noticed by counsel in the audience during the proceedings and asked to testify on the spot. The three witnesses briefly described Williams as a 'nice boy' and not a violent person. The recorded psychiatrist's testimony did little more than relate Williams' statement during an examination that in the course of his earlier robberies, he had removed the bullets from his gun so as not to injure anyone.

 In his cross-examination of the prosecution witnesses, Williams' counsel repeatedly emphasized the fact that Williams had initiated the contact with the police that enabled them to solve the murder and to identify him as the perpetrator of the recent assaults, as well as the car thefts. In closing argument, Williams' counsel characterized Williams confessional statements as 'dumb,' but asked the jury to give weight to the fact that he had 'turned himself in, not on one crime but on four ... that the [police otherwise] would not have solved.' The weight of defense counsel's closing, however, was devoted to explaining that it was difficult to find a reason why the jury should spare Williams' life.

 The jury found a probability of future dangerousness and unanimously fixed Williams' punishment at death. The trial judge concluded that such punishment was 'proper' and 'just' and imposed the death sentence. (Citations omitted.)

 120 S.Ct. at 1500–1501.

3. In reversing the death penalty in *Glenn*, the Sixth Circuit reasoned that, under *Strickland*, Glenn's trial counsel provided ineffective assistance during the penalty phase by failing to adequately investigate and prepare available mitigation evidence. *See Glenn*, 71 F.3d at 1207, 1208, 1210–1211.

hood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records. Had they done so, the jury would have learned that Williams' parents had been imprisoned for the criminal neglect of Williams and his siblings, that Williams had been severely and repeatedly beaten by his father, that he had been committed to the custody of the social services bureau for two years during his parents' incarceration (including one stint in an abusive foster home), and then, after his parents were released from prison, had been returned to his parents' custody. (Citations and footnote omitted.)

Counsel failed to introduce available evidence that Williams was 'borderline mentally retarded' and did not advance beyond sixth grade in school. They failed to seek prison records recording Williams' commendations for helping to crack a prison drug ring and for returning a guard's missing wallet, or the testimony of prison officials who described Williams as among the inmates 'least likely to act in a violent, dangerous or provocative way.' Counsel failed even to return the phone call of a certified public accountant who had offered to testify that he had visited Williams frequently when Williams was incarcerated as part of a prison ministry program that Williams 'seemed to thrive in a more regimented and structured environment,' and that Williams was proud of the carpentry degree he earned while in prison. (Citations omitted.)

Of course, not all of the additional evidence was favorable to Williams. The juvenile records revealed that he had been thrice committed to the juvenile system—for aiding and abetting larceny when he was 11 years old, for pulling a false fire alarm when he was 12, and for breaking and entering when he was 15. But as the Federal District Court correctly observed, the failure to introduce the comparatively voluminous amount of evidence that did speak in

Williams' favor was not justified by a tactical decision to focus on Williams' voluntary confession. Whether or not those omissions were sufficiently prejudicial to have affected the outcome of sentencing, they clearly demonstrate that counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background. (Citations omitted.)

We are also persuaded, unlike the Virginia Supreme Court, that counsel's unprofessional service prejudiced Williams within the meaning of *Strickland.* After hearing the additional evidence developed in the postconviction proceedings, the very judge who presided at Williams' trial and who once determined that the death penalty was 'just' and 'appropriate,' concluded that there existed 'a reasonable probability that the result of the sentencing phase would have been different' if the jury had heard the evidence. We do not agree with the Virginia Supreme Court that Judge Ingram's conclusion should be discounted because he apparently adopted 'a per se approach to the prejudice element' that placed undue 'emphasis on mere outcome determination.' Judge Ingram did stress the importance of mitigation evidence in making his 'outcome determination,' but it is clear that his predictive judgment rested on his assessment of the totality of the omitted evidence rather than on the notion that a single item of omitted evidence, no matter how trivial, would require a new hearing. (Citations omitted.)

\* \* \* \* \* \*

[T]he State Supreme Court's prejudice determination was unreasonable insofar as it failed to evaluate the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—in reweighing it against the evidence of aggravation. This error is apparent in its consideration of

the additional mitigation evidence developed in the postconviction proceedings. The court correctly found that as to the 'the factual part of the mixed question,' there was 'really ... n[o] ... dispute' that available mitigation evidence was not presented at trial. As to the prejudice determination comprising the 'legal part' of its analysis, it correctly emphasized the strength of the prosecution evidence supporting the future dangerousness aggravating circumstance. (Citations omitted.)

But the state court even failed to mention the sole argument in mitigation that trial counsel did advance—Williams turned himself in, alerting police to a crime they otherwise never would have discovered, expressing remorse for his actions, and cooperating with police after that. While this, coupled with the prison records and guard testimony, may not have overcome a finding of future dangerousness, the graphic description of Williams' childhood filled with abuse and privation, or the reality that he was 'borderline mentally retarded,' might well have influenced the jury's appraisal of his moral culpability. The circumstances recited in his several confessions are consistent with the view that in each case his violent behavior was a compulsive reaction rather than the product of cold-blooded premeditation. Mitigating evidence unrelated to dangerousness may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case. The Virginia Supreme Court did not entertain that possibility. It thus failed to accord appropriate weight to the body of mitigation evidence available to trial counsel. (Citations omitted.)

—— U.S. at ——–——, 120 S.Ct. at 1513–1516.

The Court concluded:

4. It must be noted that it is Justice O'Connor's interpretation of 2254(d)(1) which this Court has followed in re-considering the Peti-

In our judgment, the state trial judge was correct both in his recognition of the established legal standard for determining counsel's effectiveness, and in his conclusion that the entire postconviction record, viewed as a whole and cumulative of mitigation evidence presented originally, raised 'a reasonable probability that the result of the sentencing proceeding would have been different' if competent counsel had presented and explained the significance of all the available evidence. It follows that the Virginia Supreme Court rendered a 'decision that was contrary to, or involved an unreasonable application of, clearly established Federal law.' Williams' constitutional right to effective assistance of counsel as defined in *Strickland v. Washington*, [citation omitted], was violated.

—— U.S. at ——, 120 S.Ct. at 1516.

Adding to the Court's analysis of Williams' ineffective assistance of counsel claim, Justice O'Connor in her concurring opinion stated:

I agree with the Court that the Virginia Supreme Court's adjudication of Williams' claim of ineffective assistance of counsel resulted in a decision that was both contrary to and involved an unreasonable application of this Court's clearly established precedent. Specifically, I believe that the Court's discussion [of Williams' ineffective assistance of counsel claim, *supra*,] is correct and that it demonstrates the reasons that the Virginia Supreme Court's decision in Williams' case, even under the interpretation of § 2254(d)(1) I have set forth above,[4] was both contrary to and involved an unreasonable application of our precedent.

I ... agree with the Court that, to the extent the Virginia Supreme Court did apply *Strickland*, its application was unreasonable. As the Court correctly re-

tioner's claim of ineffective assistance of trial counsel during the penalty phase of his case.

counts, Williams' trial counsel would have uncovered substantial amounts of mitigation evidence. (Citations omitted.)

* * * * * *

The consequence of counsel's failure to conduct the requisite, diligent investigation into his client's troubling background and unique personal circumstances manifested itself during his generic, unapologetic closing argument, which provided the jury with no reasons to spare petitioner's life. More generally, the Virginia Circuit Court found that Williams' trial counsel failed to present evidence showing that Williams 'had a deprived and abused upbringing; that he may have been a neglected and mistreated child; that he came from an alcoholic family; ... that he was borderline mentally retarded;' and that '[his] conduct had been good in certain structured settings in his life (such as when he was incarcerated).' In addition, the Circuit Court noted the existence of 'friends, neighbors and family of [Williams] who would have testified that he had redeeming qualities.' Based on its consideration of all of this evidence, the same trial judge that originally found Williams' death sentence 'justified and warranted,' concluded that trial counsel's deficient performance prejudiced Williams, and accordingly recommended that Williams be granted a new sentencing hearing. The Virginia Supreme Court's decision reveals an obvious failure to consider the totality of the omitted evidence. *See* 254 Va. 16, 26, 487 S.E.2d 194, 200 ('At most, this evidence would have shown that numerous people, mostly relatives, thought that [Williams] was nonviolent and could cope very well in a structured environment.') For this reason, and the remaining factors discussed in the Court's opinion, I believe that the Virginia Supreme Court's decision 'in-volved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." (Citations omitted.)

—— U.S. at ——–——, 120 S.Ct at 1523–1525. Although the state courts that have considered the Petitioner's claim of penalty phase ineffective assistance of counsel did not have the benefit of reviewing the factual scenario presented by *Williams,* the analyses offered by Justice Stevens and Justice O'Connor do nothing more than apply the standard set forth in *Strickland v. Washington, supra.* It is within the legal framework of *Strickland* that this Court has evaluated the Petitioner's claim of penalty phase ineffective assistance of counsel. The Court's analysis in *Williams,* to the extent the facts are similar, has been a persuasive guide in this case.

The Petitioner has succinctly set forth the areas in which his trial counsel were deficient in failing to investigate and prepare available mitigation evidence in his Motion to Alter or Amend (Dkt.# 50). They are as follows:

- Trial counsel did not interview any members of the Petitioner's family. (*See* Exhibits, attached to Mot. to Alter or Amend, I, J, K, L, M, N, and O.)

- Trial counsel did not interview any of the Petitioner's friends or anyone else who knew him. (*See* Exhibits, attached to Mot. to Alter or Amend, D and P.)

- Trial counsel did not search any records pertaining to the Petitioner's education, health, mental problems, or juvenile offenses.

- Trial counsel failed to seek the assistance of an expert to prepare a mitigation strategy.

- Trial counsel failed to adequately prepare the Petitioner to make an unsworn statement in the penalty phase of the trial.

- Trial counsel failed to adequately investigate the Petitioner's cultural background and the effect it had on the Petitioner's life.

- Trial counsel failed to investigate the possibility of a neurological cause of the Petitioner's mental and emotional deficiencies due to his lifelong alcohol consumption.

Moreover, trial counsel did not request any time between the jury's finding of guilt and the commencement of the penalty phase of the trial to investigate any potential mitigating evidence and to prepare a mitigation strategy. Trial counsel proceeded with the penalty phase the day after the guilty verdict. (*See* Trial Tr. 1697:10–25—1698:1–10.)

The Petitioner also summarized the extensive mitigation evidence that was readily available to trial counsel. For each point raised by the Petitioner, documentary evidence exists which has been a part of the record, and which the Court has considered in reaching its decision on the Petitioner's Motion to Alter or Amend (Dkt.# 50). After reviewing the documentary evidence, the Court finds that the following summary is well-supported, and that there is no need to reproduce the actual reports herein.[5]

- The chaotic and dysfunctional family environment in which the Petitioner was raised.

- The alcohol abuse by the Petitioner's mother and father.

- The effect that his mentally retarded brother had on his life.

- The effect that the suicide of his emotionally disturbed sister had on him.

- The effect of the Petitioner's mother's emotional problems on his development.

- The role of alcohol in the Native American Indian culture in which he was raised.

- The early (since age 9) and continued use of alcohol by the Petitioner.

- The Petitioner's drug abuse.

- The lack of parental supervision during his youth and adolescence.

- The prejudices the Petitioner experienced.

- The lack of counseling or programming received by the Petitioner while he was incarcerated in the Mansfield Correctional Facility.

The evidence which the Petitioner's trial counsel failed to present during the penalty phase was similar to that which the lawyers in *Williams* failed to present.[6] The Petitioner's trial counsel made no opening statement, but merely presented the unsworn statement of the Petitioner and a closing argument in mitigation, rather than all of the mitigating evidence described above. The Respondent has not disputed any of the information offered by the Petitioner.

As in *Williams,* this Court concludes that the state courts, in their consideration of the Petitioner's claim of penalty phase ineffective assistance of counsel, unreasonably applied the law as established by the Supreme Court of the United States in *Strickland v. Washington, supra,* to the facts of this case.[7] After examining the

---

5. The Court reviewed the Affidavit of James R. Eisenberg, Ph.D., a psychologist, Exhibit D to the Petitioner's Mot. to Alter or Amend; the Affidavit of Daniel Anker, Ph.D., an anthropologist, Exhibit E; the Affidavit of Rick Ruffin, mitigation specialist with the Ohio Public Defender Commission, Exhibit F; the Affidavit of Dr. Rita Politzer, the psychologist used by the Petitioner's trial counsel, Exhibit H; and various affidavits of the Petitioner's family members and the principal of the junior high school the Petitioner attended.

6. See footnote 4, *supra.*

7. The Eighth District Court of Appeals for the State of Ohio reviewed the Petitioner's claim of penalty phase ineffective assistance of counsel upon the Petitioner's Application for Delayed Reconsideration and Memorandum in Support filed on November 16, 1992. (See Exhibit EEEE to the Return of Writ.) The Eighth District correctly identified *Strickland v. Washington, supra,* as the standard govern-

totality of the omitted evidence, the Court finds that the state court unreasonably

ing ineffective assistance of counsel claims. The state court of appeals held as follows:

> This court has applied the established criteria for determining whether, in light of *Murnahan*, [*State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992) ], a party may maintain an assertion of ineffective assistance of counsel.
>
> In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court established a two prong test for determining whether a defendant has been deprived of his right to effective assistance of counsel. First, the defendant must demonstrate deficiency in the representation and second, prejudice resulting from such deficiency. The test for determining prejudice is whether there is a reasonable probability that but for the counsel's professional errors, the result of the proceedings would have been different.
> *State v. Rausch* (Mar. 18, 1993), Cuyahoga App. No. 51329, unreported.

\* \* \* \* \*

> Appellant ... contends that trial counsel did not investigate appellant's background for the purpose of obtaining mitigating evidence and *did not present any mitigating evidence during appellant's trial.* In *State v. Johnson* (1986), 24 Ohio St.3d 87, 24 OBR 282, 494 N.E.2d 1061, cert. denied 494 U.S. 1039, 110 S.Ct. 1504, 108 L.Ed.2d 639 (1990), the Supreme Court [of Ohio] reversed a conviction and vacated a sentence of death after noting *inter alia,* that counsel for the defendant had failed to investigate his background and, therefore, failed to present any mitigating evidence at the penalty stage.
>
> Appellant argues that *Johnson* is controlling because the only evidence presented during the penalty phase by the defense was 'the unsworn statement of appellant,' *Johnson, supra,* at 89, 494 N.E.2d 1061. Yet, the Johnson court also observed the following:
>
> > We hasten to add that the mere failure to present mitigating evidence at the penalty phase of a capital trial does not itself constitute proof of ineffective assistance of counsel or deprivation of the accused's right to a fair trial. It is conceivable that the omission of such evidence in an appropriate case could be in response to the demands of the accused or the result of a tactical, informed decision by counsel, completely consonant with his duties to represent the accused effectively. The totality of the circumstances herein, however, forces us to

applied the first prong of *Strickland* to the facts of this case.[8] The state court did not

> conclude that the instant cause illustrates the utter lack of informed, calculated decision-making on the part of counsel in the penalty phase of appellant's capital trial. *Johnson, supra,* at 91–92, 494 N.E.2d 1061, (footnote deleted).

In this appeal, however, appellant had provided considerable testimony during the guilt phase which could be considered during the penalty phase as relevant to demonstrating the existence of mitigating circumstances. For example, both appellant's father and Dr. Rita Politzer discussed appellant's life experiences in detail. Tr. at 1477, *et seq.*, and at 1520, *et seq.*, respectively. Two other witnesses testified regarding alcoholism and Native Americans. Tr. at 1510, et seq.

The instructions to the jury during the penalty phase included the following:

> These mitigating factors include, but are not limited to, the nature and circumstances of the offense, the history, character and background of the offender, and any and all of the mitigating factors, including the statutory factors, but not limited thereto.
>
> > [Y]ou, the trial jury, must consider all the relevant evidence raised at the trial, the testimony, other evidence, and the statement of the Defendant Alfred J. Morales, and the arguments of counsel. And then you must determine whether the aggravating circumstances which Alfred Morales was found guilty of committing are sufficient to outweigh the mitigating factors presented in this case.
>
> Tr. at 1728–29, 1731–32. Obviously, the jury was instructed by the court to consider all of the testimony from the entire trial in determining whether the aggravating circumstances outweighed the mitigating factors.
>
> Trial counsel decided to present testimony regarding mitigating factors during the guilt phase.[ ] In light of all the circumstances, this tactic does not provide a basis for reconsideration.

8. Subsequent to the Eighth District's decision on the Petitioner' Application for Delayed Reconsideration, the Petitioner filed a Notice of Appeal in the Supreme Court of Ohio. The Supreme Court of Ohio denied the Petitioner's Motion for Delayed Reinstatement of Appeal, and affirmed the decision of the Eighth District Court of Appeals with respect to the Application for Delayed Reconsideration without opinion.

consider that trial counsel failed to make an investigation of the available mitigation evidence prior to the penalty phase of trial, but rather reasoned that trial counsel's presentation of mitigation evidence was the product of a strategic or tactical decision. In the context of the first prong of *Strickland,* the Sixth Circuit has held that before making a strategic decision, such as the type of mitigation evidence to present during the penalty phase of a trial, counsel has a duty to undertake a full investigation, consider the options, and make an objectively reasonable choice between them.[9] *See Combs,* 205 F.3d 269, 288. A decision made without a full investigation, unless a particular investigation was unnecessary to making a reasonable decision, renders counsel's decision deficient, and thus the first prong of *Strickland* is fulfilled. The Petitioner's trial counsel failed to investigate and prepare prior to making their decision as to the type of mitigation evidence to present, and considering the mitigation evidence that has been submitted in the post-conviction proceedings of this case, such an investigation was necessary. Because the Petitioner's trial counsel did not investigate, prepare, and present the available mitigation evidence, their decision to proceed with the penalty phase only one day after the jury returned the

guilty verdict cannot be considered strategic or tactical.[10] It cannot be disputed that trial counsel's decision regarding what mitigation evidence to present to the jury during the penalty phase was uninformed and, therefore, contrary to their duty to their client. *See* 1 ABA Standards for Criminal Justice 4–4.1, and commentary (2d ed.1980). As such, the failure of the Petitioner's trial counsel to investigate and prepare available mitigating evidence was objectively unreasonable.[11] For the Eighth District Court of Appeals to conclude otherwise, in the context of *Strickland,* was an unreasonable application of the law to the facts of this case.

The state court did not reach the issue of whether the Petitioner was prejudiced by his trial counsel's failure to present any mitigation evidence, beyond that which they did, during the penalty phase of the trial. After reviewing the totality of the mitigation evidence that was available to trial counsel, this Court finds that the Petitioner *was* prejudiced by his trial counsel's failure to present such evidence during the penalty phase within the meaning of *Strickland.* The state court, in failing to reach the prejudice prong of *Strickland,* did not consider the possibility that the mitigating evidence that was available to

9. The Sixth Circuit, in *Combs,* held that defense counsel's decision to put an expert witness on the stand, without knowing his ultimate opinion on the defendant's ability to act purposely, under the influence of drugs and alcohol, resulted in the presentation of "testimony that was completely devastating to the defense." *Combs,* 205 F.3d at 288. Accordingly, the decision to call the expert witness was objectively unreasonable and was found to have prejudiced the defendant.

10. After the jury returned a guilty verdict, the trial judge explained to the jury that it would be necessary to hold "a second hearing to determine what punishment [they felt was] justified." Tr. 1697:10–16. Thereafter, a bench conference was held with counsel, and the trial judge stated in open court, *"With the concurrence of counsel,* Ladies and gentlemen, we're going to start [the penalty phase] hearing tomorrow morning at 10:00." Tr. 1697:25—1698:1–10. (Emphasis added.) In

the light of all of the available mitigation evidence that has been presented in this petition, one day would not be sufficient time to investigate and prepare for the penalty phase unless counsel had prepared for it, prior to trial, in the event of a guilty verdict. It is clear from the record that trial counsel did not avail themselves of the opportunity, or any time, to investigate and prepare mitigation evidence prior to going forward with the penalty phase.

11. The Respondent's contention, and this Court's opinion as stated in the Memorandum Opinion of March 29, 2000, that trial counsel engaged in the mitigation strategy that they did to prevent negative information about the Petitioner from reaching the jury cannot stand where trial counsel's choice of mitigation strategy was completely unsupported by any investigation into the particular mitigation evidence available.

trial counsel, but was not investigated or prepared by them, may have altered the jury's selection of the penalty when it weighed such evidence against the aggravating factors. The Petitioner's trial counsel deprived him of the opportunity to have many specific details about his tumultuous life, continued and uncontrolled alcohol and drug abuse, dysfunctional family history, potential mental health problems, and detailed cultural background presented to the jury. The record of this case, the mitigation evidence presented at trial, and the mitigation evidence that was readily available to trial counsel upon investigation and preparation, raises a reasonable probability that the outcome of the penalty phase would have been different, "if competent counsel had presented and explained the significance of all the available evidence." *Williams*, —— U.S. at ——, 120 S.Ct. at 1516. Accordingly, the Petitioner was prejudiced by his counsel's deficiency during the penalty phase.

In summary, the Court concludes that, as in *Williams*, "it is undisputed that [the Petitioner] had a right—indeed, a constitutionally protected right—to provide the jury with the mitigating evidence that his trial counsel either failed to discover or failed to offer." —— U.S. at ——, 120 S.Ct. at 1513. The totality of the record reflects that the Petitioner was not afforded his constitutional right to the effective assistance of counsel as defined in *Strickland v. Washington, supra.* As such, the Eighth District Court of Appeals rendered a "decision that was . . . an unreasonable application of, clearly established Federal law."

Accordingly, the Petitioner's Motion to Alter or Amend (Dkt.# 50) is **GRANTED**. The Court's Memorandum Opinion of March 29, 2000, (Dkt.# 48) shall be amended with respect to the Petitioner's claim of penalty phase ineffective assistance of counsel consistent with the foregoing analysis.

**(4) The Petitioner is entitled to relief because the prosecution illegally suppressed *Brady* material.**

The Petitioner has alleged that he was not provided reports from the Cuyahoga County Coroner's Office in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Although the Court has granted relief to the Petitioner in the preceding section, the Court will briefly discuss his claim that evidence to which he was entitled under *Brady* was illegally withheld by the prosecution. In *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Court summarized *Brady* and its progeny, and specifically set forth the elements of a *Brady* violation. The Court stated as follows:

> In *Brady* this Court held 'that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' We have since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence. Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' Moreover, the rule encompasses evidence 'known only to police investigators and not to the prosecutor.' In order to comply with *Brady*, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in [a] case, including the police.' (Citations omitted.)

> \* \* \* \* \* \*

> There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have

been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler,* 527 U.S. at 280–282, 119 S.Ct. at 1948.

Even assuming that the Petitioner can fulfill the first two elements of a *Brady* violation, he cannot prove that without the Coroner's reports he was prejudiced. In order to establish the prejudice prong of a *Brady* violation, the Petitioner must show "that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." *Strickler,* 527 U.S. at 289, 119 S.Ct. at 1952. Moreover, the Court held that "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Strickler,* 527 U.S. at 289–290, 119 S.Ct. at 1952 (*quoting Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

The assertion of the Petitioner that he was prejudiced because he was unable to object to the prosecutor's closing, which raised by inference the proposition that the Petitioner sexually assaulted his victim, is without merit. In his closing remarks, the prosecutor, Mr. Nolan, stated:

> You take that boy to that spot with a purpose in mind. That purpose being to restrain him of his liberty. You take him to that secluded spot for some other reasons, too. There's nobody else there but you and the boy. It's secretive. No other eyewitnesses are going to be there because you're about to wreak some havoc on this boy, and you don't want other people watching you, do you, when you're about to do this?

(Tr. at 1646:14–23.) The Petitioner has provided an affidavit from his trial counsel which states that "The prosecutor's closing argument clearly was an attempt to raise the inference that Mr. Morales perpetrated a sexual assault upon Mario Trevino.

Due to the fact the state made this argument while simultaneously possessing a report documenting its falseness, Mr. Morales did not receive a fair trial. If I had possessed the report, I would have objected and immediately moved for a mistrial." (Affidavit of the Petitioner's trial counsel, Attorney Richard Damiani ¶¶ 12–14.) However, the prosecutor's remarks were highly ambiguous and may be interpreted several ways. The brief remarks stated above, taken in context and in the light of all of the other evidence presented by the State during the Petitioner's trial, were insignificant. Even had the Petitioner's trial counsel been provided with all of the reports from the Cuyahoga County Coroner's Office, such that he would have objected to the prosecutor's remark, the Court finds that there is no reasonable probability that the outcome would have been different. Accordingly, the jury's guilty verdict was worthy of confidence.

**(5) The Court prematurely denied the Petitioner's certificate of appealability.**

The foregoing conclusion that the Petitioner is entitled to a Writ of Habeas Corpus based upon penalty phase ineffective assistance of counsel obviates the need for the Court to consider the Petitioner's arguments on this issue. With respect to all other issues, the Court concludes that a certificate of appealability is not warranted.

**CONCLUSION**

The Court finds that all but one of the assertions made by the Petitioner in his Petition Under § 2254 for Writ of Habeas Corpus by a Person in State Custody (Dkt.# 12) and his Motion to Alter or Amend (Dkt.# 50) are without merit. However, the Court does find the Petitioner's claim of penalty phase ineffective assistance of counsel meritorious. The Court finds that the Eighth District Court of Appeals for the State of Ohio, in considering the Petitioner's Application for Delayed Reconsideration and Memorandum in Support, unreasonably applied existing United States Supreme Court precedent,

*Strickland v. Washington, supra,* to the facts of this case when it rejected the Petitioner's penalty phase ineffective assistance of counsel claim. Because the Supreme Court of Ohio affirmed the decision of the Eighth District Court of Appeals without opinion, it implicitly adopted the reasoning of the Appellate Court and, therefore, also unreasonably applied the law to the facts of this case with respect to the penalty phase ineffective assistance of counsel claim.

Accordingly, the Petitioner's Motion to Alter or Amend (Dkt.# 50) is GRANTED, and the Court's Memorandum Opinion and Order of March 29, 2000, shall be amended such that the Petitioner's petition is GRANTED in part. The Court hereby issues a writ of habeas corpus as follows: The Respondent shall either: (1) set aside the Petitioner's sentence of death and instead impose a life sentence; or (2) conduct another sentencing trial. The Respondent shall re-sentence the Petitioner, or conduct a new sentencing proceeding, within 120 days from the date of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**